AARON ANDERSON v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

January 31, 1908.

Nos. 15,435—(172).

**Defective Complaint.**

Complaint in a personal injury action considered and *held*, that it shows upon its face that the defendant was guilty of negligence and that the plaintiff was guilty of contributory negligence as a matter of law, and, further, that it does not properly allege that the defendant was guilty of such wilful negligence as would entitle the plaintiff to recover, irrespective of his contributory negligence.

**Wilful Negligence.**

"Wilful negligence," whereby liability is incurred irrespective of the plaintiff's negligence, is a failure, after, and not before, discovering his peril, to exercise ordinary care to prevent the impending injury.

[1] Reported in 114 N. W. 1123.

**Alternative Pleading—Demurrer.**

> Alternative pleading is not permissible. Where the only effect of such allegations is to make the pleading uncertain, the remedy is by motion. Where, however, as in this case, the complaint alleges in the alternative two statements of fact, one of which is sufficient to constitute a cause of action and the other not, they neutralize each other, and demurrer will lie.

Action in the district court for Pope county to recover $20,500 damages for personal injuries. From an order, Flaherty, J., overruling its demurrer to the complaint, defendant appealed. Reversed and remanded.

*Alfred H. Bright,* for appellant

*Ludvig Arctander,* for respondent.

START, C. J.

This is an appeal from an order of the district court of the county of Pope overruling the defendant's demurrer to the complaint in this a personal injury action.

The here material allegations of the complaint, as summarized in the brief of counsel for the plaintiff, are these: "On the 18th day of October, 1906, respondent was severely injured by being run into by an extra or special train of appellant, consisting of a locomotive and a caboose, while he was standing on appellant's right of way at the village and station of Kensington, intently absorbed in watching some excavation processes carried on by appellant by a steam shovel, engine, and crew on its said right of way, immediately north of its main track, which latter ran through the village in an east and west direction.

"The appellant's depot was situated immediately south of the main track, and the excavations were practically north of the depot. Two public highways and village streets, Kensington avenue and Central avenue, ran in a north and south direction west of the depot, and were crossed by the main track on the level; the former about three hundred, and the latter about one hundred, feet west of the depot. These two streets were much traveled, and the only means of communication between the two portions into which the village was divided by defendant's railway line. Appellant's right of way in the village had

103 M.—15

never been fenced in or in any manner shut off from the public, but that portion of the same situated between said Central avenue and the depot had for many years, with appellant's knowledge and consent, been used and traveled by the public as the only means of ingress to and egress from appellant's depot, and as the only means of communication between said depot and said Central avenue.

"Respondent intended to seek employment with the appellant in and about said excavation work, and he was watching the same with that end in view. He stood north of and close to the track, and between the track and the bank formed by the excavations, some fifty feet west of the depot, facing northeast, or in the direction of the steam shovel, and with his back to the west. The main track was practically straight and level for a distance of about one mile west of the depot, and respondent's position was such that he was plainly visible from the cab of an engine approaching from the west during all the time it would require to traverse that distance. At the point where respondent stood the noise of the steam shovel and engine was so great and deafening as to completely drown and overcome the ordinary noise of an approaching engine or train. It was appellant's custom and duty to ring the bell and blow the whistle of its locomotive before crossing said two village streets, and to keep a constant lookout for persons or other objects that might be on appellant's right of way at or in the vicinity of said two village streets, and between said Central avenue and said depot, so as to avoid running into or over such persons or objects.

"On the said 18th day of October, 1906, while respondent was, and for a period of from five to six minutes had been, so standing at said point of appellant's right of way, intently absorbed in watching the operations of said steam shovel, and oblivious and unaware of the approaching of any locomotive on appellant's line from the west, one of appellant's locomotives did approach from the west at a great and dangerous rate of speed, and passed through said village of Kensington, crossing said two village streets, without giving any signal or warning of its approach by bell or whistle, and 'the servants of the defendant in charge of said locomotive, although they knew, or in the exercise of ordinary care on their part could readily have known or ascertained, that plaintiff was in said exposed and dangerous position,

and oblivious to and unaware of the approach of said locomotive, nevertheless failed to check the progress of said locomotive, and failed and neglected to give any signal or warning of its approach, but, on the contrary, carelessly and negligently and wantonly and recklessly ran and operated said locomotive at a great and dangerous rate of speed over and across said highways, and through said village, and upon and against said plaintiff, whereby plaintiff was then and there with great force and violence struck by said locomotive and hurled in the air for a distance of many feet, and with great force and violence thrown into said excavation.' "

It is too obvious for argument that these allegations charge the defendant with negligence. It is also clear from the complaint that the plaintiff, at the time he was struck and injured, was standing on the defendant's right of way and so near to the rails that the locomotive in passing struck him. He was then absorbed in watching the operations of a steam shovel, and oblivious and unaware of the approach of the locomotive, although his view to the west, whence the locomotive came, was unobstructed for a mile. He was not an employee of the defendant, nor was he working near the rails for any one, nor was he using the right of way for the purpose of going from the street to the depot, nor was he standing on the right of way at the invitation of the defendant, express or implied. He voluntarily located himself in a place of obvious danger for his own purposes, and while executing them he became oblivious to the approach of the locomotive behind him. Manifestly the complaint shows upon its face that the plaintiff was guilty of contributory negligence as a matter of law.

It follows, then, that the complaint does not state a cause of action, unless the effect of the plaintiff's contributory negligence is obviated by allegations showing that the defendant was guilty of wilful or wanton negligence. The pleader in drafting the complaint evidently appreciated this fact, and attempted to charge the defendant with wilful negligence. This presents the pivotal question raised by the demurrer: Does the complaint so charge the defendant? The allegation in this respect is that the servants of the defendant in charge of the locomotive, "although they knew, *or in the exercise of ordinary care on their*

*part could readily have known or ascertained,"* that the plaintiff was in an exposed and dangerous position, nevertheless failed to check the speed of the locomotive, or give any signal or warning of its approach. If the words we have italicized had been omitted from the complaint, it admittedly would have stated a cause of action in favor of the plaintiff, notwithstanding his own contributory negligence, because it would then allege that the defendant was guilty of wilful negligence in the premises.

It is, however, the contention of plaintiff's counsel that the defendant was guilty of such wilful negligence as would entitle him to recover, irrespective of his own negligence, if the defendant either knew or discovered, or might have known or discovered by the exercise of ordinary care, his perilous position in time to have avoided injuring him. This adds a material qualification to the doctrine of wilful negligence, as laid down by the decisions of this court, by adding thereto the alternative condition, "might have known or discovered."

This attempted qualification is not without the support of judicial authority in some of the states and of some text-writers. It would seem that an adoption of the qualification would in practice eliminate all distinction between ordinary negligence and wilful negligence, and permit a party guilty of contributory negligence to recover in all cases if his adversary failed to exercise ordinary care to discover whether he had been negligent and thereby placed himself in a perilous situation. However this may be, we adhere to the rule, established by the uniform decisions of our own court, which rejects the qualification and requires the exercise of ordinary care to avoid the threatened injury after, and not before, discovering the peril of the party guilty of contributory negligence; or, in other words, there is a well-defined distinction between ordinary negligence and wilful or wanton negligence.

Ordinary negligence is not actionable, if the negligence of the injured party directly contributed to the result; but liability is incurred by wilful negligence, irrespective of such contributory negligence.

Wilful negligence is not simply greater negligence than that of the injured party, nor does it necessarily include the element of malice, or an actual intent to injure another; but it is a reckless disregard of

the safety of the person or property of another by failing, after discovering the peril, to exercise ordinary care to prevent the impending injury. Fonda v. St. Paul City Ry. Co., 71 Minn. 438, 450, 74 N. W. 166, 70 Am. St. 341; Sloniker v. Great Northern Ry. Co., 76 Minn. 306, 79 N. W. 168; Lando v. Chicago, St. P., M. & O. Ry. Co., 81 Minn. 279, 83 N. W. 1089; Olson v. Northern Pac. Ry. Co., 84 Minn. 258, 87 N. W. 843; Alger, Smith & Co. v. Duluth-Superior T. Co., 93 Minn. 314, 101 N. W. 298; Teal v. St. Paul City Ry. Co., 96 Minn. 379, 104 N. W. 945.

We accordingly hold that the allegations of the complaint in this case, to the effect that the servants of the defendant in charge of the locomotive, in the exercise of ordinary care on their part, could readily have known or ascertained that the plaintiff was in a dangerous position in time to have prevented the impending injury, and failed so to do, do not allege wilful negligence on their part. There is, then, no clear and direct allegation that the defendant was guilty of wilful negligence.

This brings us to the question whether the alternative allegations may be rejected as surplusage. We are of the opinion that they cannot be, for the allegations are to the effect that the defendant either knew, or in the exercise of ordinary care might have known; and, inasmuch as only one of the alternative propositions constitutes wilful negligence, it is a clear case of alternative pleading, which is not permissible under any system of practice. Dunnell (Minn.) Pl. § 309; 6 Enc. Pl. & Pr. 268. Where the only effect of alternative allegations is to render the pleading indefinite or uncertain the remedy is by motion and not by general demurrer. Where, however, as in this case, the complaint alleges in the alternative two statements of fact, one of which would be legally sufficient to constitute a cause of action and the other not, they neutralize each other, and demurrer will lie. See Guile v. McNanny, 14 Minn. 391 (520), 100 Am. Dec. 244, Jamison v. King, 50 Cal. 132, and Wheeler v. Thayer, 121 Ind. 64, 22 N. E. 972. If both allegations legally meant the same thing, it would be otherwise. Clague v. Hodgson, 16 Minn. 291 (329).

It follows that the complaint does not allege facts constituting a cause of action, and that the order appealed from must be reversed,

and cause remanded, with leave to the plaintiff to apply to the district court, if so advised, for permission to amend his complaint.

So ordered.

JAGGARD, J. (dissenting).

The doctrine of wilful negligence on which the majority opinion is based is opposed to principle and the general trend of judicial opinion. Inasmuch as that opinion expresses the rule which has for some years been recognized as in force in this state, a somewhat extended statement of reasons for departing from it follows. The objections to it are twofold: (1) It involves a misnomer, and a fundamental misconception of contributory negligence; (2) in experience it operates unjustly and contrary to general law.

1. It had its origin when many elementary principles of negligence were in confusion and transition. Davies v. Mann, 10 M. & W. 546 (1842), holding that plaintiff can recover if defendant by ordinary care could have avoided his negligence, is, it may be inaccurately, regarded as having originated the uncertainty as to when contributory negligence barred recovery against a negligent defendant. In some jurisdictions the solution of the problem was found in the acceptance of the three degrees of negligence and in the application of comparative negligence. Both doctrines were generally repudiated. Courts which had accepted both the rule in Davies v. Mann and the broad generalization that, when the negligence of plaintiff and defendant concurred to produce damage, plaintiff could not recover, were thereafter in a dilemma. Escape was suggested by the rule that contributory negligence is no defense to a wilful wrong like assault and battery or fraud. It would be logical, the argument was, to say that contributory negligence always barred actions in which the plaintiff had been, however slightly, negligent, but not where defendant's wrong had been wilful. This is not controvertible. But it justifies neither the term "wilful negligence" nor the rule set forth in the majority opinion.

"Wilful negligence" is a misleading and self-contradictory expression. If conduct is wilful, it is not negligent; if negligent, it is not wilful. Negligence naturally involves inattention; wilfulness, intention. In consequence, it has been generally rejected. See, for example, Bolin v. Chicago, 108 Wis. 333, 84 N. W. 446, 81 Am. St. 911.

A count on negligence is not supported by proof of a wilful and wanton wrong. Louisville v. Perkins, 44 South. 602. To meet this criticism it was said that wilful negligence does not necessarily include either malice or actual intention to injure. This answer destroys the very purpose for which the unfortunate combination of words was made, viz., to offset, not negligence against negligence, but wilfulness against negligence. It also removes whatever justification the expression may have been entitled to as a convenient colloquialism. Resort was also had to use of an equivalent—"a reckless disregard of consequences." If such be its meaning, why not use the synonym itself? "Wilful negligence" would appear to become superfluous. The meaning of "wilful," as so used, is strained. See 8 Words & Phrases, 7468, 7835. The inquiry is natural, what is wilful negligence, except aggravated carelessness? At best it is a thin disguise for gross negligence, plus an epithet. Indeed, many authorities say this quite frankly. A number of them will be found collected in Lake Shore v. Bodemer, 139 Ill. 596, 606, 29 N. E. 692, 32 Am. St. 218; and see 8 Words & Phrases, 7483. The repudiation of the degrees of negligence renders the use of the phrase untenable.

The opinion generally accepted rejects both this terminology and doctrine. A conventional statement of the principle is this: "The defense of contributory negligence will not avail if defendant, by the exercise of reasonable care, could have avoided the accident." McCormick, J., in Turnbull v. New Orleans & C. R. Co., 120 Fed. 783, 57 C. C. A. 151. (That opinion contains an admirable summary of relevant philosophy and of a few leading authorities. The best extended discussion will be found in 1 Thompson, Neg. § 216, et seq.) This is indisputably the rule in England (Radley v. London & N. W. Ry. Co., 1 App. Cas. 754, 46 L. J. [1877] Exch. 573, reversing the judgment of the Exchequer Chamber, L. R. 10 Exch. 100, and restoring that of the Court of the Exchequer, L. R. 9 Exch. 71; and see review of English cases in Beven, Neg. 168 to 176 (Cf. Cayzer v. Carron, 9 App. Cas. 873), and of the supreme court of the United States (Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 558, 11 Sup. Ct. 653, 35 L. Ed. 270 [April 6, 1891]; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485 [Dec. 7,

1891]), and of most of the state courts (see collection of cases which discuss the rule in Inland & Seaboard Coasting Co. v. Tolson, in Rose's Notes to U. S. Rep. (Supp. III.) 88, 89; 11 Rose's Notes to U. S. Rep. 1181, 1182). A large number of authorities have employed the language of what is called the "last clear chance." Some of them will be found collected in 1 Kinkead, Torts, 534, and in 1 Thompson, Neg. § 240.

The resulting rule may be thus stated: Plaintiff's own negligence will not preclude a recovery (1) if, after such negligence was an accomplished fact, defendant omitted to do some act which in the exercise of reasonable care it was required by law to do and which would have prevented the injury. Styles v. Receivers, 118 N. C. 1094, 24 S. E. 740; (2) and if plaintiff did not fail, after his danger was known, to use due diligence in endeavoring to escape. Gothard v. Alabama, 67 Ala. 114. The aberrations from this rule are in some measure due to Beach on Contributory Negligence and to its frankly avowed hostility to Davies v. Mann, as "a pernicious and mischief-making authority." See, for example, Holwerson v. St. Louis, 157 Mo. 216, 57 S. W. 770, 50 L. R. A. 850, 80 Am. St. 625. That treatise, however, is not properly entitled to much weight in this connection. It is inconsistent. Section 28, for example, accords with the view here taken, and is at right angles with the author's general theory. Its partisanship is evidenced by its submersion of Radley v. London & N. W. Ry. Co., supra. It was originally published before the Inland & Seaboard Coasting Co. and Ives cases, supra, had been decided by the supreme court of the United States. Later editions have ignored them and their contradiction of the law it advocates.

The generally accepted, and to my mind the correct, view set forth by the authorities in this class of cases is this: Contributory negligence precludes recovery, not on the theory that the plaintiff is to be punished, or required to come into court with clean hands, or that there can be no contribution between wrongdoers, or that volenti non fit injuria, or the like, but because he will not be allowed to recover damages for self-inflicted harm. The gist of the question is: "Did plaintiff's negligence in any degree cause the damage of which he complains?" Pollock, Torts, 380; Wharton, Neg. §§ 85, 302; Barrows,

Neg. 34–38. Not all necessary antecedents are causes. For example, the violation of a "blue law" may have been essential to the presence of plaintiff at the time of the injury. That "collateral wickedness," however, is, according to the prevailing opinion, no defense to actionable negligence of a carrier or other person. So it may be that an accident would not have happened unless defendant had himself been careless. That fact does not necessarily mean that it was more than an inducing cause or a condition. It may not have been the efficient or producing cause or the cause in law. Pollock, Torts, 374, 375, 380. Liability for negligence depends, not on the causa sine qua non, but on the causa efficiens. Beven, Neg. 175, 176. The distinction in the immediate connection is nowhere better stated than by Carpenter, J., in Nashua v. Worcester, 62 N. H. 159, 164: "If due care on the part of either (plaintiff or defendant) at the time of the injury would prevent it, the antecedent negligence of one or both parties is immaterial, except, it may be, as one of the circumstances by which the requisite measure of care is to be determined. In such a case the law deals with their behavior in the situation in which it finds them at the time the mischief is done, regardless of their prior misconduct. The latter (plaintiff's negligence) * * * is the cause of the danger; the former (defendant's) is the cause of the injury. * * * The law no more * * * justifies an avoidable injury to the person of one who carelessly exposes himself to danger than to his property similarly situated in his absence. He who cannot prevent an injury negligently inflicted upon his person or property by an intelligent agent, 'present and acting at the time,' is legally without fault; and it is immaterial whether his inability results from his absence, previous negligence, or other cause." And see Brember v. Jones, 67 N. H. 374, 30 Atl. 411, 26 L. R. A. 408; Wheeler v. Grand Trunk, 70 N. H. 607, 50 Atl. 103, 54 L. R. A. 955.

2. As practically applied, the theory of wilful negligence operates unjustly to both parties. On the one hand, a charge using these words has a natural and vicious tendency to result in the verdict for damages in extent appropriate to a malicious wrong and inappropriate to negligence. They will inevitably be punitive in character. Many

cases are constantly occurring in which excessive or unreasonably large verdicts may be, and are, by the defendants attributed to such a charge. On the other hand, under the rule announced in the majority opinion, the plaintiff is not allowed to recover on a state of facts which would entitle him to go to the jury under the generally accepted rules of law. It is this branch of the evil with which we have to deal here.

The majority opinion limits the right to recover where (defendant) has been guilty of contributory negligence to cases in which the defendant actually knew of his peril. This restriction of his right to recover is directly deduced from self-contradictory phraseology. It is not the historical rule. In Davies v. Mann itself the defendant did not discover the peril before the accident. 3 Harvard Law Rev. 272, 277. He was bound to use due care. Some of the American cases involving a liability when the defendant did not, but ought to have, discovered plaintiff's negligence, will be found collected in 1 Thompson, Neg. pp. 228, 229, § 239. And see Dean v. Oregon, 38 Wash. 565, 80 Pac. 842. The reasoning is as follows: Where the defendant owes plaintiff no duty in the performance of which plaintiff's peril would have been discovered, the failure to discover may be colloquial, but not actionable, negligence. Actual knowledge of that peril, under such circumstances, would impose a duty because of humanitarian considerations. No knowledge is attributed or implied. When defendant owes a duty to take care of persons of the class to which plaintiff belongs, the law must hold the failure to perform that duty to be, actionable. It is then immaterial whether defendant's knowledge is actual or constructive. It then becomes material whether, if defendant did not actually know, he might have known by the exercise of ordinary care. For example, a railroad company owes no duty to keep a lookout for a trespasser on its main line. If an engineer sees an ordinary person, though a trespasser, in a position of danger, a duty to take care is imposed, with due reference to the presumption that such person will exercise care to protect himself; but, if the engineer does not see him, the company will not be liable if he is struck. When, however, the engine is moving, for example, through a crowded thoroughfare, the initial obligation on the railroad requires a look-

out. The company is not exonerated by showing that the engineer's attention had been distracted, but would be by showing that the engineer could not have seen him because of obstruction to view.

In the well-considered case of Lampkin v. McCormick, 105 La. 418, 29 South. 952, 957, 83 Am. St. 245, Nicholls, C. J., applying the rule as to avoidable consequences, said: "Neither the traveler on the common highway nor the railroad company has an exclusive right of passage. Even on a common road travelers must look out for the approach of other vehicles; and this is the more necessary at a railroad crossing, because movement on such a road is more speedy, and because the consequences of such a collision are usually disastrous. Precaution—looking out for dangers—is therefore a duty. Thompson on Negligence, p. 403." [Reeves v. Delaware, 30 Pa. St. 454.] "Railroad Co. v. Heilman, 30 Pa. 464. * * * With ordinary prudence and watchfulness, the plaintiff would have been seen by one in charge of the advancing car. Not to have seen him, in our judgment, makes it evident there was a want of even ordinary care. If the employee (of defendant) had exercised the care required, the accident might have been avoided." The plaintiff recovered, although admittedly negligent.

There is grave doubt whether the crossing here in issue was one as to which defendant was obliged to take care. Conceding this, I find it very difficult to discover on what basis plaintiff could be held to be of a class of persons to whom defendant owed a duty to exercise care. He was not a traveler in the highway at the time of the accident. That he intended subsequently to use it is immaterial. Did the company owe a duty to an idler, deliberately standing in a place of known danger?

My dissent is therefore rather to the doctrine of the majority opinion than as to its result.