# C. A. PEASLEE v. RAILWAY TRANSFER COMPANY OF MINNEAPOLIS.[1]

January 24, 1913.

Nos. 17,820—(166).

**Questions for jury.**

In this, a personal injury action, the evidence on the issues of defendant's negligence and plaintiff's contributory negligence was such that the court was not warranted in withdrawing either from the jury or directing a verdict for defendant.

**Charge to jury.**

It was not error for the court, in view of defendant's contentions at the trial, to instruct the jury that, as a matter of law, plaintiff was not negligent merely by reason of deviating from the usual course in walking upon a public street.

**Verdict not excessive.**

Verdict of $4,158 *held* not excessive for a broken leg near the hip where a permanent shortening of one inch and a quarter, deformity of the bone, and wasting of the muscles of the leg resulted. Besides it appeared that in wages, hospital, and medical attendance plaintiff had lost or paid $750, and that he had suffered severe pains which he was not free from at the trial, more than a year after the injury.

Action in the district court for Hennepin county to recover $5,000 for personal injury. The allegation of the complaint in respect to defendant's negligence is quoted in the seventh paragraph of the opinion. The answer alleged that if the accident occurred it was not due to any negligence whatsoever on the part of defendant or any of its employees, but was due to plaintiff's failure to exercise ordinary care for his own safety. The case was tried before Waite, J., who at the close of the testimony denied defend-

[1] Reported in 139 N. W. 613.

Note.—On the question of the care required of one in sudden emergency, see note in 37 L.R.A. (N.S.) 43.

ant's motion for an instructed verdict, and a jury which returned a
verdict for $4,158. From an order denying defendant's motion
for judgment notwithstanding the verdict or for a new trial, it
appealed. Affirmed.

*W. H. Bremner, F. M. Miner* and *George W. Seevers,* for appellant.

*Larrabee & Davies,* for respondent.

HOLT, J.

In Minneapolis, on the west side of the river, Sixth avenue
south is the main thoroughfare to the milling district. Crossing
this avenue at right angles and running in a southeasterly and north-
westerly direction parallel with the river is Second street. Adjoin-
ing this street on the north are four large flour mills with loading
platforms extending up to, and in some places encroaching on,
Second street. Of these mills the Anchor mill comes up to the easter-
ly line of Sixth avenue south, thence easterly along Second street are
located Washburn C, B, and A mills.

The whole of Second street, with the exception of a strip 15 or
20 feet on the southerly side, is occupied by railway tracks. From
one of these tracks, designated in the record as No. 2, being the
south-bound main, located just north of the center of Second street,
diverge several spurs running to the loading platforms of these
mills. Of these spurs one, called track 6, diverges from the main
track about 100 feet west of the west line of Sixth avenue south,
runs northeasterly along the loading platform in front of the Anchor
mill, at the end of which it stops; the next spur, called track 5, di-
verges near the center of Sixth avenue south, parallels track 6, ex-
tending about 40 feet further east, and ends at the west end of the
loading platform of Washburn C mill; track 4 is a spur diverging
from No. 2 about 30 feet east of the east line of Sixth avenue south,
paralleling track 5 and running in front of the loading platforms of
the Washburn mills mentioned.

A large number of men are employed at these mills day and night.
At midnight some shifts change, and also some men go to Washing-
ton avenue, a block farther south, for lunch. The usual course

taken by the men at the Washburn mills in going from the mills to Washington avenue is to walk westerly on the loading platform of those mills until the southwest corner thereof is reached, where steps lead down to the ground between spur tracks designated as tracks 4 and 5, thence traveling between these till they run into the main track No. 2, thence westerly along or upon this track to Sixth avenue south, thence southerly along said avenue.

Plaintiff was employed in one of the Washburn mills. About midnight on February 28, 1911, he left the mill, walking westerly on the loading platform and down the steps at the southwest corner thereof, then continued between the tracks 4 and 5 mentioned until, as he claims, he found that, where track 4 joined or terminated into main track No. 2, cars obstructed his progress west, as well as cars upon track 5. He then crossed over between two cars on track 5 to track 6 and proceeded southwesterly on the latter track, when suddenly a car bore down on him from the west. Concluding that the best way to save himself was to jump on the loading platform of the Anchor mill, he made the attempt, but did not succeed in getting clear onto the platform. His body below the hips was caught between the car and the edge of the platform, and his leg near the hip broken and severely injured.

The jury returned a verdict for $4,158. Defendant appeals from the order denying its motion for judgment non obstante, as well as its motion for a new trial.

The contentions of defendant are: (a) Defendant's negligence was not established; (b) plaintiff's contributory negligence conclusively appears; (c) the court erred in its charge; and (d) the damages are excessive.

Plaintiff alleged that defendant negligently and "without the giving of signal by bell, whistle, or otherwise, and without having any lights upon its cars or any employee to clear its tracks ahead of its cars, kicked, ran, and propelled one of its cars" against plaintiff, injuring him. Plaintiff undertook to prove that the uniform custom and practice of defendant, when running in cars on the spurs to the loading platforms of these mills during nighttime, was to have a man with a lighted lantern either walking ahead of the

car as it was pushed in, or else stationed on top of the car at the front end thereof. There was evidence to establish such custom, and failure to observe it with regard to the car which injured plaintiff. Even if no custom existed with reference thereto, we think it was for the jury to say whether pushing a railway car in the dark along a much traveled public street, without any light or person at the front to give warning of its approach, was negligence.

In determining whether plaintiff was not, as a matter of law, guilty of contributory negligence, the customary way in which cars were moved there, if any there was, or else the manner in which ordinary care under the existing conditions would require cars to be run upon these tracks, must be considered as matters bearing on plaintiff's conduct; also the fact that the place of the accident was a public street. Plaintiff had a right to expect, until the contrary appeared, that defendant would use ordinary care to avoid collision with other users of the street. In backing over Sixth avenue during the nighttime, defendant conceded that the practice was to have a man with a lighted lantern either on the top of the front end of the car, or else walking ahead of it. It would not be difficult for the jury, with this concession and the testimony of plaintiff and his witnesses as to defendant's practice, to come to the conclusion that the custom was also to give notice or warning of the approach of cars pushed in on any of these tracks on Second street by a lighted lantern carried by a man either on top of the front end of the car, or immediately in front and ahead of it. For it may not be amiss to say that the same precaution to warn persons of an approaching car ought to be taken on Second street generally as is done where it crosses Sixth avenue.

There is also evidence that the street electric light was not lit, and that the car approached plaintiff from out of the darkness, so that he could not see it until it came right upon him. When sudden danger confronted plaintiff, he may have erred in jumping for the platform instead of jumping to the space between tracks 5 and 6, but acting upon an error of judgment in an unexpected emergency is not, as a matter of law, negligence.

Nor may we say that by walking on track 6 instead of between

that and track 5, on which cars were then standing, plaintiff was per se guilty of negligence. The ground occupied by the tracks, as well as the spaces between, were part of the public street open for public travel, and we may not say that, because cars were frequently moved upon the tracks, it would constitute negligence, as a matter of law, to walk over or along the tracks.

Evidently defendant contended at the trial that, because plaintiff did not proceed between tracks 4 and 5, the usual course of the men in going to Sixth avenue, and because he walked upon a track instead of between tracks, he was guilty of negligence, as a matter of law. For the court endeavored to give the jury the correct view upon this proposition by this instruction:

"I think you ought to consider, as a matter of law, that he [plaintiff] was not negligent merely by reason of the fact that he went out—where the evidence tends to show he was—of the beaten path. There is evidence tending to show that people leaving the platform of the Washburn-Crosby mills went in a diagonal direction between tracks 4 and 5 and over to the corner of Sixth avenue south and Second street. He had a right, however, to take any course he chose, and taking any course was not in itself negligence, although he placed himself in a position which was more dangerous than it would have been if he had taken the other course; and the care he ought to have exercised to protect himself would be proportionately increased."

Defendant insists that by this instruction the jury were told that plaintiff was not negligent in taking a dangerous course when a safe one was open to him. Defendant called attention to no inaccuracy in the charge at the time. And we think that, considering the charge as a whole, the quoted part is not open to the construction contended for. It is clear that the court left the issue of plaintiff's negligence in every aspect to the jury; stating that the mere fact that plaintiff was upon a part of the street of greater

danger does not, of itself, establish negligence, as a matter of law. In fact, the court conveys the idea that the care to be exercised for one's protection must be commensurate with the dangers of the situation. The greater the danger, the higher the care required. The jury was instructed that if plaintiff did not use his senses as a fairly intelligent and prudent person ought to do, and would do, in such a situation, and, by failing to use his senses, got into the predicament which resulted in this injury, he would not be entitled to recover. And in another part the court said: "If you think he [plaintiff] was negligent * * * and did not act as an ordinarily prudent man would have acted under the circumstances, and by reason of that, in part, he was injured, then that would end the case."

The verdict is assailed as excessive. The special damages of loss of wages, doctors' and hospital expenses, appear to be $750, leaving $3,400 for pain and permanent injury. We are cited to cases where damages not so large as these for somewhat similar injuries were reduced. Slette v. Great Northern Ry. Co. 53 Minn. 341, 55 N. W. 137; Johnson v. St. Paul City Ry. Co. 67 Minn. 260, 69 N. W. 900, 36 L.R.A. 586; Northrup v. Hayward, 99 Minn. 299, 109 N. W. 241; Goss v. Goss, 102 Minn. 346, 113 N. W. 690.

In the two last cases the reductions were made by the trial courts, and this court held that, as reduced, the amount of recovery allowed was not excessive.

In the Johnson case plaintiff was 75 years old, and, in view of that fact, the court reduced the verdict to $2,500, although the injury to an ankle was very serious. The court took into consideration that the purchasing power of money was then very great, while we may now take notice that the reverse is true. In the Slette case, a man 30 years old sustained a transverse fracture of the thigh bone. The testimony was that the leg was at the trial as good as ever, save it was from one-half to three-fourths of an inch shorter than before. His earning capacity was only $35 per month. This court reduced the verdict from $4,100 to $2,100. The age of plaintiff is not made to appear except it may be inferred that since he had worked in these mills for 30 years he must be close to 50

years old. He was valuable to his employer, for while yet on crutches he went back to work at the same wages he had previous to the injury, namely, $100 per month. The leg was shortened an inch and a quarter, a wasting of the muscles, a tilting of the pelvis, and an enlargement of the anterior portion of the thigh are permanent injuries. Plaintiff testified that pains attend every step he takes with the injured. leg. While the damages awarded seem liberal, we do not think they are so large that we ought to interfere after the same have been approved by the trial court.

Order affirmed.