## I. L. DEMERAY v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 29, 1913.

Nos. 17,999—(94).

**Railway — injury to licensee — evidence.**
    Plaintiff, a mere licensee at best, boarded a moving train engaged in switching operations, and took a position on the running board of a box

1 Reported in 141 N. W. 804.

Note.—On the question of the duty of a carrier to protect one other than employee from injury by movement of cars or trains while loading or unloading freight or express, see note in 31 L.R.A.(N.S.) 960.

car about six feet from the end of the car, after the cars next to that end had been uncoupled and were being "kicked" back; the engine was suddenly slowed down in response to the signal of the brakeman in charge, and this threw plaintiff forward and off the car, injuring him: *Held,* that the evidence wholly fails to show that the brakeman knew that plaintiff was in a perilous position when the signal was given.

Action in the district court for Pipestone county to recover $10,230 for personal injury. The facts are stated in the opinion. The answer alleged that, if plaintiff were injured, his injury resulted solely and proximately as the result of his own lack of care and by means of his own negligence. The case was tried before Nelson, J., who, at the close of the testimony, denied defendant's motion for a directed verdict in its favor, and a jury which rendered a verdict for $4,260.97 in favor of plaintiff. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied on condition that plaintiff consented to a reduction of the verdict to $2,260.97. The consent was given. From the order denying defendant's motion for judgment notwithstanding the verdict or a new trial, it appealed. Reversed, with direction to grant judgment notwithstanding the verdict.

*M. L. Countryman* and *Winsor & Keith,* for appellant.
*Janes, Howard & Janes,* for respondent.

HOLT, J.

On September 5, 1908, the plaintiff was in charge of a grain elevator served by an adjacent side track of the defendant at the village of Ihlen, Pipestone county, and had been so employed about a year and a half prior thereto. On the day mentioned, two loaded cars were on the side track ready for transportation, and an empty box car ordered from the defendant the day before by the plaintiff was to be spotted at the elevator. The defendant's track at this village runs practically north and south. When the north bound freight train which was hauling in the empty car ordered and was to take away the two loaded cars arrived at Ihlen, at about 10 o'clock in the forenoon of that day, it stopped on the main track, before the north end of the side track was reached, and proceeded to do the necessary

switching. The movements of the operation and the plaintiff's relation thereto were substantially as follows:

The empty box car to be spotted, being the eighth or ninth from the engine, was uncoupled from the cars in rear and these were left standing; then the engine with attached cars moved north until the side track switch was passed; this switch was thrown for the side track; the engine was reversed, shoving the cars in on the side track. As the cars passed the elevator platform, the plaintiff climbed up on the empty box car and took a position on top on the running board about 6 feet from that end of the car which was to be coupled to the two loaded cars mentioned. The brakeman in charge coupled on the loaded cars, and, as the engine began moving north toward the switch, the brakeman came up to the plaintiff and inquired who he was and what he was there for. Plaintiff replied that he was running the elevator and was there to help spot the car in the right place. As the car on which the brakeman and plaintiff stood passed the switch, the brakeman dropped off; the plaintiff saw him signal the engineer to stop; the train stopped; the brakeman threw the switch for the main track and signalled the engineer to back up; this signal was also observed by the plaintiff. When the train, in backing, had attained a speed of from 6 to 8 miles per hour, the engine was suddenly slowed down; but the 2 loaded cars, now in front as the train was moving, having in the meantime been uncoupled, moved away toward the standing part of the train, leaving a rapidly increasing gap between them and the car plaintiff was on. The sudden slowing down threw plaintiff forward, that is in the direction the cars were being moved, and not being able to recover his balance in the 6 feet (the distance between where he stood when the slow down was made and the end of the car) he was forced to jump off. He did so, but struck the ground, or ties, with such force that the bones in one heel were fractured and the arches on both feet broken down.

Plaintiff claimed that the cars obscured his view so that he did not see the brakeman give the slow-down signal, and that he thought the backward movement of the engine would continue until the loaded cars were pushed against and coupled to the standing train; therefore he was unprepared for the sudden change of motion of the car

he was on. The purpose of the train crew was to "kick" the loaded cars toward the standing train, and then shove the empty car in on the side track and spot it at the plaintiff's elevator.

The plaintiff predicated his right to recover on the defendant's wilful or wanton negligence, and the complaint properly stated such cause of action. Demeray v. Great Northern Ry. Co. 114 Minn. 496, 131 N. W. 634. Upon the trial, under a charge not here criticized, the jury rendered a verdict for $4,260.97 against the defendant. This was reduced by the court to $2,260.97, and defendant's blended motion for judgment or a new trial denied. The defendant appeals from the order.

We are agreed that the evidence fails to show any wilful or wanton negligence on the part of the defendant or any of its servants in charge of the train at the time of plaintiff's injury. It was conceded that the movements of the train were responsive to the signals given by the brakeman already referred to. There is no pretense that there was any negligence on the part of the engineer, nor could there be. So that necessarily the plaintiff must depend wholly upon wanton negligence of this brakeman. To charge the brakeman with such negligence, the proof must show that he knew that the plaintiff was in such a position that, if the slow down signal was given without warning to him, he would be in peril. Pettit v. Great Northern Ry. Co. 58 Minn. 120, 59 N. W. 1082; Gagne v. Minneapolis Street Ry. Co. 77 Minn. 171, 79 N. W. 671; Lando v. Chicago, St. P. M. & O. Ry. Co. 81 Minn. 279, 83 N. W. 1089; and Alger, Smith & Co. v. Duluth-Superior Traction Co. 93 Minn. 314, 101 N. W. 298, and other cases therein cited clearly hold that the one charged with wilful negligence must have knowledge of the peril before he can be charged with liability.

If the testimony of plaintiff, and his was the only testimony offered as to the occurrence, is examined, we find that it fails utterly to show knowledge on the part of the brakeman that the position of plaintiff was one of peril. We may well say that the plaintiff held himself out to the brakeman as a person not only familiar with the operations of switching, kicking, and spotting railroad cars, but as one having sufficient experience to perform the actual work thereat. There is no evidence that a person possessing some knowledge and

experience in railroad switching is exposed to peril in the position the plaintiff took on this car. For aught that appears, all the movements of the locomotive and cars on this occasion were properly and carefully made. The speed attained when the slow down signal was given is not shown to have been unusual, or dangerous to any one acquainted with railroad work. Neither is there any proof that it was not proper or safe railroading to "kick" in these loaded cars, then slow down as was done, for the purpose of setting in on the side track the empty car on which plaintiff was standing without first warning him.

Furthermore, even if it might be said that standing on top of a box car 6 feet from the end during switching operations is dangerous, there is no testimony that the brakeman knew that plaintiff occupied that position when the slow-down signal was given. Plaintiff states that he could not then see the brakeman because the car hid him from view. That being so, of course the brakeman could not have seen the plaintiff and his position. The brakeman was engrossed in his work. He was three or four car lengths from the plaintiff when the slow-down signal was given. After he left plaintiff, the train had stopped and started. Under these circumstances, it is not reasonable to infer that the brakeman must have known that the plaintiff did not shift his position, and remained oblivious to the warnings these motions of the train would give him to seek a safer place, if the one he occupied was perilous. In the absence of any evidence that the ordinary careful railroad brakeman in charge of a switching operation such as the one in question would know that one who pretends to have enough knowledge and experience to board a moving train engaged in switching cars for the purpose of assisting thereat is in a dangerous position on the running board of a box car 6 feet from the end thereof in case of the sudden change of speed, we are satisfied there is an entire failure to sustain the wilful or wanton negligence charged.

The defendant was entitled to a directed verdict. The order appealed from is reversed in so far as it denied judgment, and the case is remanded with direction to grant judgment for defendant notwithstanding the verdict.

PHILIP E. BROWN, J., took no part.