# OLIVER R. BRYANT v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

May 3, 1946.

No. 34,152.

[1]Reported in 23 N. W. (2d) 174.

578

*L. B. daPonte* and *D. R. Frost,* for appellant.

*Kelly & Mangan,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for damages caused to plaintiff's automobile when struck by defendant's train while it was stalled on the latter's track at a street crossing in Anoka on October 10, 1944. The jury returned a verdict of $500 for plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or a new trial, this appeal is taken.

On appeal, defendant contends (1) that the evidence fails to establish negligence chargeable to defendant; (2) that the court erred in not holding plaintiff guilty of contributory negligence as a matter of law; and (3) that the court erred in the admission and exclusion of certain evidence and in giving and refusing certain instructions to the jury, as hereinafter set forth.

The facts are as follows: On October 10, 1944, at 7:25 a. m., Mrs. Oliver R. Bryant, wife of plaintiff, was driving his automobile from the Anoka State Hospital, on Fourth avenue of said city, in a southerly direction. Fourth avenue runs north and south and intersects the double tracks of defendant's railroad, which run east and west.

The railroad tracks at this crossing are several feet above the highway grade. The crossing is not marked with flasher signals,

but is protected by ordinary railroad *"Stop"* signs. The evidence does not disclose to what extent the highway is traveled. An affidavit of Mrs. Bryant, submitted by defendant, set forth that "the approach to the railroad right of way is about seven feet higher than the street level on both sides"; that "a thick cluster of trees to the right * * * makes it impossible to see an approaching train * * * until after the climb upgrade has commenced"; that at the time of the accident there was "a huge pile of railroad ties between the tracks about 500 feet from the crossing on the north, which further obstructs any view"; and that "the track curves in such a way as to also prevent seeing an approaching train."

Before driving onto the tracks, Mrs. Bryant stopped the car about 70 feet north of the first rail. At this point she looked in both directions for trains, and, seeing none, started the automobile in low gear, with the choke out, up a slight grade and onto the tracks. When the front of her car was about two feet over the north rail of the southerly track, she accidentally killed the motor, stopping the car at that point. She had not again looked for approaching trains until her car thus stopped. She estimated her speed in approaching the tracks after the first stop at three or four miles per hour. As she tried to start the car, she heard a train whistle and then saw a train approaching from the west about 1,387 feet away. She immediately got out of the car to see if it was on the tracks, and, having ascertained that it was, again got into it and attempted to start it. Unable to do so, she got out and attempted to push it off the tracks. Unable to do this, she ran toward the train trying to signal it with her arms.

The train consisted of 19 empty Pullmans, one locomotive, and a caboose. It was used for the transportation of troops. It was empty at the time. It is conceded that it was traveling at the rate of about 50 miles per hour in an easterly direction toward Anoka. The engineer testified that he first observed the car stalled on the track when the train swung onto a bridge over the Rum River, the west end of which bridge is about 1,080 feet from the center of the highway. The fireman testified that he first saw the car about the

same time. He admitted that if he had looked toward the crossing when he was at what is designated as a "whistling post," some 1,287 feet from the crossing, he would have seen the stalled car on the tracks.

The engineer testified that upon observing the car he immediately applied the emergency brake and sanders and shut off the throttle to bring the train to a stop. The train struck the car at the crossing, throwing it into a small ditch between the tracks and causing the damages for which this action was brought. After the collision, the train came to a stop, but only after the engine and eight Pullman cars had passed beyond Fourth avenue. The engine is 80 feet in length and each Pullman car 72 feet in length, indicating that approximately 656 feet of the train had passed over the crossing before it came to a stop, and that a distance of approximately 1,736 feet was traversed by the train from the time it came onto the bridge until it stopped, as described. A witness for plaintiff testified that the train did not perceptibly slow down prior to the time it came in contact with the automobile.

Testimony was presented by defendant to the effect that a train of the size and dimensions here involved could not have been brought to a stop in less than 1,200 to 1,400 feet; that the braking equipment thereon was of the best possible type; that it was in good working order; and that the application of the emergency brakes here, in what is known as "dynamiting the train," was the quickest and most effective way of bringing the train to a stop. There is no dispute that the engine whistle was blown and that the engine bell was ringing as the train approached the crossing.

In his complaint plaintiff alleged that defendant was negligent, as follows:

"That notwithstanding the fact that plaintiff's said automobile was stalled upon said track, the defendant so negligently managed, ran and operated said train, at a high, dangerous and reckless rate of speed, without having said train under proper control, even though the defendant's engineer knew or should have known that said automobile was on said intersection, that said train ran

into and against plaintiff's automobile, breaking, bending, twisting and damaging same."

In submitting the case to the jury on the issue of plaintiff's contributory negligence, the court gave the following instructions, which defendant contends were erroneous:

"* * * It was the duty of Mrs. Bryant in the operation of the plaintiff's automobile to exercise reasonable care, to have the same under proper control at all times. A railway grade crossing is a place of danger and the track itself a warning. Persons approaching or upon such a grade crossing are charged at all times with the knowledge of the probability of trains approaching such crossing, and it was the duty of Mrs. Bryant in the exercise of ordinary care to at all times manage the automobile in the light of all of the conditions surrounding the particular locality and place where she was operating the automobile.

"If you find that in the operation of the plaintiff's automobile the plaintiff's wife failed to exercise such care as an ordinary prudent person usually exercises under the same or similar conditions, you will find the plaintiff guilty of negligence, and if you further find that such negligence contributed to cause the plaintiff's damage in some degree, that is, contributed wholly or partially to cause the plaintiff's damage, then the plaintiff cannot recover, * * *."

On the issue of defendant's negligence, the court gave the following instructions, which defendant contends likewise were erroneous:

"* * * High speed may not, in itself, constitute actionable negligence but may be such when considered in connection with conditions existing on its [defendant's] right of way at much-used crossings in villages or cities. Whether or not the operation of the train at a fast rate of speed through a city and over and across the streets thereof is an act of negligence depends upon the facts of the particular case, the presence or absence of fixed crossing signals, the population of the village, the extent and use of the streets crossing the railroad track, and all other facts throwing light upon the question, and it is for the jury to determine what

constitutes an unreasonable speed, taking into consideration all of the conditions and circumstances then and there existing. * * *

"If, under the evidence and the instructions of the court, you find that the defendant failed to exercise ordinary care in the manner in which it operated its train at *and immediately before the collision,* taking into consideration all of the conditions as shown by the evidence to have then and there existed, you will find the defendant guilty of negligence, and if you further find that such negligence was the direct and proximate cause of the damage to the plaintiff you will return a verdict in favor of the plaintiff and against the defendant, unless you also find that the defendant's [plaintiff's] wife was guilty of negligence in the operation of the plaintiff's car and that his damage was due entirely or partly to her fault." (Italics supplied.)

In substance, defendant asserts that Mrs. Bryant's failure to watch further for approaching trains as she started across the track constituted contributory negligence as a matter of law, that the train's speed of 50 miles per hour at the time and place was not negligence as a matter of law, and that the court erred in submitting such issues to the jury.

Defendant requested the court to instruct the jury as follows:

"The engineer who gives the usual signals of the approach of the train has the right to assume that a vehicle on or near the track at the crossing will be out of the way in time to avoid a collision.

"Under such circumstances and after the usual and proper signals have been given, the engineer is not required to slow down or stop his train until it appears that a collision is imminent unless he does so.

"If it appears in this case that the men in charge of defendant's train on the occasion in question did everything that could be done to stop the train in question after discovering that the automobile of the plaintiff was on the defendant's track, then your verdict should be for defendant."

The court's refusal to so instruct the jury is likewise assigned as error.

■ We do not feel that Mrs. Bryant was guilty of contributory negligence as a matter of law. It is true that a driver on a highway about to pass a railroad crossing is bound to look before crossing, but we have held that failure so to look does not necessarily constitute contributory negligence as a matter of law. Minn. St. 1941, § 169.27 (Mason St. 1940 Supp. § 2720-212), provides:

"The railroad and warehouse commission is hereby authorized to designate particularly dangerous highway grade crossings of railroads and to order stop signs thereat. When such stop signs are erected the driver of any vehicle shall stop within 50 feet, but not less than ten feet, from the nearest track of such grade crossing, and shall proceed only upon exercising due care."

Section 169.96 (§ 2720-291), however, provides:

"In all civil actions, a violation of any of the provisions of this chapter * * * shall not be negligence per se but shall be prima facie evidence of negligence only."

In construing similar provisions, we have held that acts in violation of such statutes are to be considered independently of their result in transgressing the statute; that is, that they are to be weighed as though there were no such restrictive statutory regulation. In Luce v. G. N. Ry. Co. 203 Minn. 470, 476, 281 N. W. 812, 815, this court stated:

"The crossing in question had been designated a stop crossing by the railroad and warehouse commission. L. 1925, c. 336, § 7, 1 Mason Minn. St. 1927, § 4743-7, declares:

" 'It shall be the duty of all persons controlling the movement of vehicles to bring such vehicles to a full stop and to ascertain whether or not trains are approaching such crossing.' Section 17 is anomalous in that it denounces as a misdemeanor any violation of the law by anyone, and then adds:

" 'Provided that the violation of Sections 7 and 8 hereof shall

not of itself constitute contributory negligence as a matter of law.'

"We construe the proviso as applying only to the result of acts as a violation of statutory law, and as meaning that such result is not to be taken as automatically making contributory negligence. * * * the acts out of which the violation arises are to be considered just as before and independently of their result in transgressing the statute. In other words, on the issue of contributory negligence, they are to be weighed as though there were no such statute."

The well-settled rule is that the failure to look does not of necessity bar recovery unless such failure to look may be deemed the proximate cause of the accident. In Polchow v. C. St. P. M. & O. Ry. Co. 199 Minn. 1, 7, 270 N. W. 673, 676, we stated:

"The record in this case indicates that had plaintiff stopped at a point sufficiently far away from the track and had he then reconnoitred, it is doubtful, considering the speed of the train, whether it would have promoted his safety. * * *

* * * * *

"We therefore conclude * * * that the question of contributory negligence under such circumstances is one of fact for the jury."

What is the proximate cause is usually left for the jury's determination. Prendergast v. C. B. & Q. R. Co. 138 Minn. 298, 164 N. W. 923. Here, obviously it could not be said that the failure of the driver to look was, as a matter of law, the proximate cause of the accident. Had the car been in proper working condition, it may well have passed over the tracks without stalling long before the train arrived at the crossing, and the jury might have fairly concluded that failure of the driver to look after the first stop had no direct relationship to the accident. We hold that the instructions given by the court on this issue sufficiently stated the rule of law applicable. See, Pokora v. Wabash Ry. Co. 292 U. S. 98, 54 S. Ct. 580, 78 L. ed. 1149, 91 A. L. R. 1049; Turner v. M. St. P. & S. S. M. Ry. Co. 164 Minn. 335, 205 N. W. 213; Polchow v. C. St. P. M. & O. Ry. Co. *supra.*

■ Defendant asserts that a speed of 50 miles per hour at the time and place was not negligence as a matter of law, and that the court erroneously submitted this issue to the jury. As previously indicated, the court instructed the jury to determine (1) whether defendant's speed at the time in question was such as to constitute negligence; and (2) whether defendant failed to exercise ordinary care in the manner in which it operated its train at and immediately before the collision. We assume from the instructions that the jury had for determination, first, the question of defendant's ordinary negligence as related to the speed of its train and, second, whether the defendant was guilty of what has been designated "wilful and wanton negligence" after discovering plaintiff's property in a position of peril.

(The "wilful-and-wanton negligence" doctrine, which is somewhat peculiar to Minnesota, has been designated a "misnomer." See, Mueller v. Dewey, 159 Minn. 173, 198 N. W. 428; Anderson v. M. St. P. & S. S. M. Ry. Co. 103 Minn. 224, 114 N. W. 1123, 14 L.R.A.(N.S.) 886. In substance, it has been defined as a failure to exercise ordinary care after discovering another in a position of peril. Havel v. M. & St. L. R. Co. 120 Minn. 195, 139 N. W. 137; Sloniker v. G. N. Ry. Co. 76 Minn. 306, 79 N. W. 168; 24 Minn. L. Rev. 81. The obligation imposed under this rule extends and is applicable to personal property as well as to individuals. West Const. Co. v. Atlantic Coast Line R. Co. 185 N. C. 43, 116 S. E. 3; Menger v. Laur, 55 N. J. L. 205, 26 A. 180, 20 L. R. A. 61; Miller v. Central Vermont R. Co. 95 Vt. 69, 113 A. 524; Nicol v. Oregon-Washington R. & N. Co. 71 Wash. 409, 128 P. 628, 43 L.R.A.[N.S.] 174; Annotation, 92 A. L. R. 55. While the complaint and instructions here are not as definite on this issue as might be desired, careful examination of them compels the conclusion that the parties and the court intended to and did submit to the jury the question of defendant's wilful and wanton negligence as related to the conduct of its employes after they discovered plaintiff's property stalled on the track.)

■ Elliott, Railroads (3 ed.) §§ 1655 and 1656, sets forth the general rule with reference to speed of trains at crossings as follows:

"§ 1655. * * * Ordinarily, * * * the question is one of fact for the jury. * * * a high rate of speed may be perfectly proper at country crossings, although it might be considered negligence at a crossing in a populous city. Whether it is negligence or not usually depends upon the circumstances of the particular case, * * *."

"§ 1656. Where a crossing is unusually dangerous because the track is curved or the view obstructed, or because of its peculiar construction or situation, it is the duty of the company to * * * take such precautions as the dangerous nature of the crossing requires. * * * This rule is especially applicable when the company itself causes the obstruction, as, for instance, *where it has allowed weeds and trees to grow up on its right of way, or has piled up wood, or left cars in such a place that they obstruct the view.* It also requires the company, as a general thing, to take greater precautions at a dangerous crossing in a city than at an ordinary crossing in the open country. And it may even require flagmen or gates to be placed at the crossing, although these are unnecessary in ordinary cases, in the absence of a statute or an ordinance requiring them. * * * It is usually a question of fact, or a mixed question of law and fact, for the jury to determine, under proper instructions, whether the company has exercised reasonable care in the particular case, and it should not be forgotten that the traveler must also exercise such reasonable care * * *." (Italics supplied.)

In Minnesota, it appears that this court has adopted or followed the foregoing general rule. In Engberg v. G. N. Ry. Co. 207 Minn. 194, 290 N. W. 579, 154 A. L. R. 206, we had occasion to consider the question. There, the highway which crossed the railroad tracks was paved and straight. Telegraph poles along the tracks carried three crossarms each. Two semaphores were in view from the highway. A signal tower controlled the protective semaphores and other mechanism of the crossing. Electric automatic signals were

in operation. A concrete pedestal had on top thereof the word *"Stop"* in large black letters on a yellow background. Below it were two red electric lights which flashed alternately as the train approached. We there stated (207 Minn. 197, 290 N. W. 581):

· "What is excessive speed of trains in passing over highway crossings depends much upon the character of the crossing itself and the precautions taken to warn travelers of its presence. * * * Over a crossing as open and well protected as this one, we consider as matter of law that a speed of 50 miles per hour is not negligent."

The question was likewise considered in Hoyum v. D. W. & P. Ry. Co. 203 Minn. 35, 279 N. W. 729. There, the engineer had sounded his whistle up until the train was 100 feet from the crossing. He knew that travelers were warned by warning signs and that the train was visible for more than 500 feet. A slight storm had rendered the highway slippery. Steam and smoke issuing from the smokestack of the locomotive obstructed the fireman's view. Statutory signals were given as required. There, an automatic electric signal was swinging across the crossing, with a red electric light thereon which commenced operating when the train was within 2,000 feet of the crossing. It was full daylight, and the headlight of the locomotive was burning. We there stated (203 Minn. 37, 279 N. W. 730):

"* * * We think the fact that the engineer ran this train at 40 miles an hour over this crossing knowing that the fireman's view ahead was obstructed by the steam and smoke issuing from the smokestack is not enough to show negligence."

There, we quoted with approval the Pennsylvania rule in Haller v. Pennsylvania R. Co. 306 Pa. 98, 103, 159 A. 10, 12, as follows:

"A speed of 40 miles an hour is not sufficient by itself or when associated with any fact or facts present in this case to support a finding of negligence. Before the question of speed at a crossing can be submitted to a jury, it must be in evidence that the speed testified to was greater than was usual at that place or that special

circumstances existed there at that time and were known or should have been known to defendant or its servants which rendered necessary a lower speed at that point."

In Molden v. M. St. P. & S. S. M. Ry. Co. 160 Minn. 471, 473, 200 N. W. 740, 741, we quoted the rule as follows:

"* * * High speed may not in itself constitute negligence, but when considered in connection with the absence of warnings of a train's approach to a dangerous city or village crossing it may be of much significance. * * * At least, absence of such safety devices and measures bears upon the question of negligence in running at a high speed."

In Lawler v. M. St. P. & S. S. M. Ry. Co. 129 Minn. 506, 509, 152 N. W. 882, 883, we referred to the question in the following language:

"* * * There is some conflict in the evidence as to the speed of the train, the same being estimated all the way from 48 to 60 miles an hour; * * * defendant maintained no gates at this crossing, nor a flagman to warn pedestrians * * * nor any crossing bell, often found at crossings of this kind. In this situation there would seem * * * no particular difficulty in holding that the question whether the operation of the train over the crossing at a high and dangerous rate of speed was an act of negligence on the part of defendant, was one of fact. * * * It is true that defendant was not required by statute to station a flagman at this crossing, or required to maintain gates or a signal bell, * * *. But those warning precautions could have been provided, and their absence is an element proper for consideration in determining the question whether it is negligence to run a train through such a village at a high and dangerous speed, imperiling, as it may, the lives of citizens making use of the street over which the train passes."

From the foregoing, the rule appears well established here that, if there is anything dangerous or unusual about a crossing within the corporate limits of a municipality, or if it be improperly guarded

by signals, regardless of statutory requirements, or if obstructions interfere with the view of travelers using the same, and such factors are known to the company, a fact question arises as to the proper speed at which such a crossing may be passed.

Here, the only signal present was an ordinary stationary *"Stop"* sign. The crossing was within the corporate limits of Anoka. No red flasher signals or other automatic warnings had been installed. The track curved to the north some distance west of the crossing, which somewhat obstructed the view of travelers. The highway was somewhat lower than the tracks just before the intersection therewith. The evidence indicates that trees and wood piled by the railroad company partially obstructed the view. Had defendant's speed been somewhat less while passing through Anoka and across its street intersections, the train possibly could have stopped within a shorter distance and thereby have avoided striking plaintiff's car stalled on its tracks. Under all such circumstances, the speed of defendant's train may well have been the proximate cause of the accident, and, accordingly, the court properly submitted to the jury the question whether the operation of the train over the crossing at the speed indicated was negligence and the proximate cause of the accident.

█ It appears that the court also instructed the jury to determine whether defendant's operation of its train *after* its employes had observed plaintiff's car in a position of peril constituted negligence. As previously indicated, this would fall within the Minnesota "wilful-and-wanton negligence" doctrine, which requires the exercise of ordinary care *after* discovering a person or property in a position of peril and which counts the failure to exercise such care as actionable negligence if it be the proximate cause of injury to such person or property. Westerberg v. Motor Truck Service Co. 158 Minn. 202, 197 N. W. 98. It is the failure *after, and not before,* discovering the peril, to exercise ordinary or reasonable care to avoid impending injury. Anderson v. M. St. P. & S. S. M. Ry. Co. 103 Minn. 224, 114 N. W. 1123, 14 L.R.A.(N.S.) 886, *supra;* Demeray v. G. N. Ry. Co. 121 Minn. 516, 141 N. W. 804; Westerberg v.

Motor Truck Service Co. 158 Minn. 202, 197 N. W. 98, *supra.* Contributory negligence is no defense to an action based upon wilful or wanton negligence. Turenne v. Smith, 215 Minn. 64, 9 N. W. (2d) 409; Hinkle v. M. A. & C. R. Ry. Co. 162 Minn. 112, 202 N. W. 340, 41 A. L. R. 1377; Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166, 70 A. S. R. 341. Wilful and wanton negligence cannot be predicated upon honest misjudgment. Ashe v. M. St. P. & S. S. M. Ry. Co. 138 Minn. 176, 164 N. W. 803. Under this doctrine, the question here would be: Did the locomotive engineer do everything within reason to. bring the train to a stop immediately upon discovering the automobile stalled on the tracks at the crossing? This issue appears to be in dispute. The engineer properly testified that he did everything possible to bring the train to a stop; that there is no more effective way of doing this than by "dynamiting" the train. On the other hand, there was testimony submitted by defendant that the train might have been stopped within a distance of 1,200 to 1,400 feet. There is evidence from which the jury might properly conclude that the engineer did not attempt to bring the train to a stop immediately upon discovery of the stalled automobile. There is the testimony of a witness for plaintiff that the train did not perceptibly slow down prior to the collision. The actual distance which the train traveled before it came to a stop after swinging onto the bridge was 1,736 feet, substantially in excess of the number of feet in which defendant's witness testified the train could have been brought to a stop. It would seem that all such factors make this question properly one for the jury under proper instructions from the court. In Havel v. M. & St. L. R. Co. 120 Minn. 195, 197, 139 N. W. 137, 138, *supra,* we stated:

"* * * There was no direct contradiction of his [engineer's] testimony that he saw no one at any time on the tracks. If the jury were bound to accept his testimony as true in its entirety, the defendant was entitled to a directed verdict. There could not, from the very nature of the case, have been any direct contradiction of the engineer's testimony that he did not see any one on the tracks; but the jury were not bound to accept it as true, if other

circumstances in evidence furnished a reasonable basis for concluding that it was not true. Lang v. Ferrant, 55 Minn. 415, 57 N. W. 140.

"There was other evidence tending to show that the engineer must have seen the men walking on the track and oblivious to their danger, if, as he testified, he was at his post and looking ahead along the track. There was also evidence tending to show that a man could have been seen on the track from 100 feet to a quarter of a mile ahead, and, further, that the defendant's foreman, who passed along the tracks on a hand car at 7:10 o'clock the same morning, saw the men lying on the ground when he was from 100 to 300 feet away. Upon a consideration of the whole evidence, we are of the opinion that the defendant was not entitled to an instructed verdict on the issue of its wilful negligence."

We cannot ascertain here whether the jury determined that the speed of defendant's train formed the basis of its finding of negligence or whether it depended upon the jury's determination that defendant had failed to exercise ordinary care after discovering plaintiff's stalled automobile. If the jury finding was based upon the latter, it would seem that defendant was entitled to have the court give the instructions requested, as above set forth, so that the jury might have the benefit of them in guiding it to a proper determination of this issue. Defendant's request in this respect was denied and exception duly taken thereto. The failure to give the requested instruction was made the basis of defendant's motion for a new trial, and the record of it was properly preserved so as to present this question for determination here. We feel that the court's failure to give the requested instruction was error and that the jury did not have a proper basis for determining the issue relative to the conduct of defendant's engineer after the discovery of plaintiff's stalled automobile. Upon a new trial we feel that justice will be better served if both the complaint and the instructions clearly cover the issues to be submitted, first, as to the question of defendant's ordinary negligence, particularly with reference to speed, in view of the nature of the crossing, and, second, the

question of its negligence as it relates to the actions of its employes after they discovered plaintiff's automobile stalled on the crossing, in accordance with the applicable doctrines and rules herein set forth.

■ The duties and obligations imposed upon defendant under the *wilful-and-wanton negligence doctrine* are not to be confused with defendant's ordinary duty to exercise reasonable care on approaching public highway crossings. We have held that a railroad company must exercise greater precautions at crossings in a city than at an ordinary highway crossing in open country (Klotz v. Winona & St. P. R. Co. 68 Minn. 341, 71 N. W. 257; Peaslee v. Railway Transfer Co. 120 Minn. 347, 139 N. W. 613; Gowan v. McAdoo, 143 Minn. 227, 173 N. W. 440); that it is bound to be on the lookout for men, women, and children at public crossings and to exercise due care to discover them; and that it is not enough merely to exercise care to avoid injuring them after discovering them in places of danger. Urbas v. D. M. & N. Ry. Co. 113 Minn. 309, 129 N. W. 513. We have further held that a railroad company is bound to exercise due care to avoid injuring property on crossings. Erickson v. G. N. Ry. Co. 117 Minn. 348, 135 N. W. 1129, 39 L.R.A.(N.S.) 237, Ann. Cas. 1913D, 763. Ordinarily, whether a railroad has exercised due care in the above respects is a question for the jury unless the evidence is conclusive. Stepp v. M. & St. L. R. Co. 137 Minn. 117, 162 N. W. 1051.

Failure of defendant here to fulfill any of the duties and obligations ·above described would constitute ordinary negligence, and, if such negligence be determined to be the proximate cause of plaintiff's damage, it would, in the absence of contributory negligence, entitle the latter to recover.

Reversed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.