STEPHEN L. PURINTON *vs.* MAINE CENTRAL RAILROAD COMPANY.

Cumberland. Opinion January 18, 1887.

*Railroads. Crossing. Negligence. New trial.*

When the evidence is conflicting on the point upon which the case turned, the verdict will not be set aside unless it is clearly against the weight of evidence.

It is the duty of those in charge of a train of cars to keep a sharp lookout, in order to avoid collisions with teams at crossings.

ON motion to set aside the verdict.

The opinion states the material facts.

*Wilbur F. Lunt,* for the plaintiff.

*Drummond and Drummond,* for the defendant.

WALTON, J. The plaintiff has recovered a verdict of one hundred and thirty-two dollars and forty-seven cents, against

the Maine Central Railroad Company, for damage to his furniture occasioned by the collision of a freight train with a team on which the furniture was loaded. The only question is whether the verdict is so clearly against the weight of evidence as to require the court to set it aside and grant a new trial.

We do not think it is. The collision occurred at a crossing in the town of Deering. It was in March, and the ground was bare near the railroad track, and a little distance from the track the highway was icy and slippery. The plaintiff's goods were on a sled drawn by four horses. When the sled crossed the track it struck upon the bare ground and stuck. The horses had reached the icy portion of the highway, and when they attempted to pull hard enough to start the load they would slip, and one of them fell. The teamster was notified that a train was approaching, and he seems to have made every effort possible to get out of the way, but he was unable to do so. To add to his embarrassment, the gate tender let a swing gate down on to his load. It was then impossible for him to move forward without tearing his load to pieces or breaking the gate. Several bystanders tried to assist him; and one of them told him not to be excited, that the train-men saw him and were slowing up the train. And he was finally told that the train had stopped. But this proved not to be true, or, if true, the train started again and moved down upon him at the rate of about four miles an hour, and in attempting to pass him, struck the hind end of his load and knocked it to pieces.

Could not this accident have been avoided by the exercise of reasonable care by the gate tender and the engineer in charge of the train? It has been decided again and again that it is the duty of the traveler upon a highway to look carefully for approaching trains before attempting to cross a railroad track. But the duty of keeping a sharp lookout does not rest upon him alone. It is equally the duty of those in charge of a train of cars to keep a sharp lookout. Horses are liable to become unmanageable at railroad crossings. They may become frightened, or, as in this case, a team may get stuck, and be unable to move on; and it is the duty of those in charge of trains of cars to be

watchful, and if they see that such an accident has happened, to endeavor to stop their trains in season to avoid a collision. It is true that this collision occurred in the evening, and the gate tender says he did not see the load of goods on which he lowered the gate. And the engineer in charge of the train gives the same excuse. He says it was very dark, and he did not see the load of goods till the moment it was struck. The evidence is conflicting with respect to the amount of light. This is probably the hinge on which the case turned. The jury probably found that it was light enough for the gate tender and the engineer to have seen the team and the predicament it was in, if they had been reasonably vigilant, and had kept a proper lookout; and if they did so find, we do not think the verdict is so clearly against the weight of evidence as to require us to set it aside.

*Motion overruled. Judgment on
the verdict.*

PETERS, C. J., VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.