HERBERT C. BUTLER

*vs.*

ROCKLAND, THOMASTON AND CAMDEN STREET RAILWAY.

KNOX.    Opinion July 26, 1904.

*Street Railway Company. Its rights and duties. Speed of cars. Due care.*
*Contributory and contemporaneous Negligence.*

1. A street railway company has the lawful right to operate its railway in the location where it has been placed, and run its cars singly or in trains upon the track; but it is its duty to do so, having due regard to the safety, not only of travelers upon the street, but of those who may have occasion to cross the track in driving out from the yards of houses situated along the railway.

2. The speed at which a car or train may properly be run, the kind of control over it, and the degree of watchfulness imposed upon those in charge, must depend to some extent upon the surrounding conditions, such as the nearness of the track to the side of the street and to the houses, the likelihood of persons driving out from the yards, and whether the driveways are so situated that persons driving out over them can see or learn of the approach of cars in season, with due care, to avoid collision. The railway company and its servants have a right to assume that all such persons will themselves be in the exercise of ordinary care.

3. It is the duty of a street railway company at all times to use due care in view of apparent dangers and those which may reasonably be expected, so to regulate the speed of its cars, so to have them under control and so to be on the lookout for teams about to cross, that those in the teams, if they themselves are in the exercise of due care, shall not be put in jeopardy.

4. The person in charge of the car must exercise due care and judgment, and the movements of the car must be regulated with reference to the apparent situation. If it be apparent that a collision is likely to occur, it is the duty of the servant in control of the car to be ready to use, and to use, if necessary, and when necessary, all practicable means to prevent it.

5. Applying the foregoing rules to the evidence in this case, *Held:* That the jury were warranted in finding that the defendant was negligent.

6. But the evidence also shows that the plaintiff was clearly negligent and that his negligence contributed to the injury. And in such a case, where the plaintiff is guilty of contributory negligence, he must fail unless it

appears further that after the plaintiff's negligence, independent of and distinct from any prior negligence of his own, the defendant was negligent, and that this negligence was the proximate cause of the plaintiff's injury. It must appear that at some point of time, in view of the entire situation, including the plaintiff's negligence, the defendant was thereafter culpably negligent, and its negligence the latest in the succession of causes.

7. *Held;* that the defendant's negligence was not subsequent to and independent of the plaintiff's contributory negligence, but that it was contemporaneous with it and operated to produce the result in connection with the plaintiff's negligence, and not independently of it; that the plaintiff's negligence actively continued from a point about twenty feet from the railway track, where he first had opportunity to see the approaching train of the defendant which was not more than two hundred feet away, to the point of collision, and that it was operative to the last moment, and contributed to the injury as a proximate cause.

8. The doctrine of prior and subsequent negligence is not applicable when the negligence of the plaintiff and that of the defendant are practically simultaneous.

On motion for new trial by defendant.    Sustained.

Action on the case to recover damages for personal injuries sustained by plaintiff in a collision between defendant's cars and the team in which plaintiff was riding.

Plea, general issue.    Verdict for plaintiff for $8,157.50.

The facts, so far as material, are stated in the opinion.

*J. E. Moore and D. N. Mortland,* for plaintiff.

*Arthur S. Littlefield and Orville D. Baker,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

SAVAGE, J.    Case for damages for personal injuries sustained in a collision between the defendant's cars and the team in which the plaintiff was riding.    The plaintiff obtained a verdict which the defendant, on motion, seeks to have set aside.

It appears that the line of the defendant's railway in Rockport, at the point where the collision occurred, lies on the easterly side of the highway, and the outer rail, towards the sidewalk, is nineteen feet from the south-westerly corner of a house known in the case as the Shepard house.    By the driveway leading easterly from the street by the southerly side of the Shepard house to the yard, the

distance from the rail to a point opposite the corner of the house is twenty feet. Standing at the corner of the Shepard house, and looking northerly towards Camden the first object or obstruction to vision is a trolley pole about eighty-four feet from the center of the driveway, and the ordinary distance easterly from the rail. One hundred and thirty-one feet further on in the same direction is another trolley pole, and on each side of the pole a tree a foot and a half in diameter. The trees were each about ten feet from the pole, were in line with it, and trees and pole were about parallel with the railway track. These trees and pole partly obscure a view of the track. One hundred feet further on, or three hundred and fifteen feet from the center of the driveway is a third trolley pole. Between the second and third poles, but easterly, and upon the easterly side of the road, is a house called the Burgess house. There are three slight curves in the railway track, and beyond the Burgess house, near the third pole spoken of, the house obstructs the view and the track passes from the sight of an observer who may be at the corner of the Shepard house. So much for the physical situation about which there seems to be no controversy.

On October 2, 1902, the plaintiff, who was a clerk in a grocery store, was driving a covered delivery wagon. The cover extended so far forward as the front edge of the seat, and rose perpendicularly, and so over to the other side. The effect was that the plaintiff, if sitting on the seat, could not look out at a right angle without leaning forward. He started from Rockport village, which is southerly from the Shepard house, and drove to that house where he called. He testified that on his way he met one of the defendant's passenger cars proceeding from Camden towards Rockport. These cars run half hourly. He drove into the yard on the southerly side of the Shepard house, made a delivery of goods, returned to the wagon, took his seat, turned and drove out westerly towards the street. The plaintiff testified that as he came out of the yard, he looked southerly in the direction of Rockport, having in mind the car which naturally would cross the one he had met, at Eells crossing, further to the south, and would be coming towards the Shepard house; also that when he reached the corner of the Shepard

house he pulled up the reins a little and leaned forward a little and looked northerly on the track towards Camden, that he did not see any cars, nor hear any, nor hear any bell or gong, that he then settled back upon the seat and drove on to the track, and that his horse was walking all the time.

Meanwhile, a train of the defendant's cars loaded with lime rock was being propelled southerly from a quarry, past the Burgess house, and the trees which have been spoken of, towards the driveway at the Shepard house, on its way to the lime kilns in Rockport. The train consisted of three rock cars pushed by a motor car in the rear. Each rock car was thirteen and one half feet in length and the motor car was nineteen feet. The length of the train was in all fifty-nine and one half feet. The weight of the train was approximately thirty-two and one half tons. Just as the plaintiff's wagon was over the rails at the driveway, it was struck by the forward rock car, and the plaintiff was thrown out and seriously injured. The wagon was thrown forward to the left hand, but the horse on the right apparently was not touched. The car itself was derailed. The train pushed it along about twenty-five feet before it stopped.

The plaintiff claims that the train was traveling at the rate of at least sixteen miles an hour, while he himself was going at the rate of not more than two or two and a half miles an hour. The defendant claims that the train was moving only from six to eight miles an hour, and that the plaintiff drove his horse down the driveway at a quick trot, say six miles an hour, slowing somewhat as he approached the track.

Beyond an estimate of the speed at which the train was moving several hundred feet before the driveway was reached, the plaintiff introduced no direct testimony respecting the movements of the train. But the defendant's witnesses, the trainmen, testified in effect, that the train had reached a point fifty or sixty feet from the driveway, when the plaintiff's horse appeared from behind the Shepard house, going towards the track at a trot, that the brakeman on the front end of the front car instantly shouted and signalled to the motorman to stop, and that the motorman at once reversed the action of the motor, the effect of which was to reduce the speed of the train so suddenly

that the front brakeman was thrown from the car, and this, he says, was at almost the same instant that the car struck the wagon. He also testified that the collision occurred before he had time to set his brake, the chain of which was slack at the time. The witnesses also testified that the gong on the motor· car was ringing, and had been ringing for several hundred feet back. They estimated the speed of the train at from six to eight miles an hour, and testified, that by reversing the motor, the most efficient process known, the train could be stopped in from seventy-five to one hundred feet.

The burden was upon the plaintiff to show that his injuries were caused by the negligence of the defendant or its servants, and that no want of due care on his part contributed to the injury, or, if he himself was guilty of contributory negligence, that some distinct and later negligence of the defendant was the proximate cause of the injury. *Atwood* v. *Railway*, 91 Maine, 399. The defendant contends that it is so clearly manifest that the plaintiff has not proved any one of these essential propositions that the court is required to set the verdict aside, to prevent a miscarriage of justice.

I. Was the defendant or its servants guilty of negligence? Or to state the question more accurately, were the jury justified in finding them guilty? In finding them so, is their conclusion unmistakably wrong? The court is not required, or even permitted, to set aside a verdict merely because the jury came to a conclusion different from that to which the court would have come. The jury have the right for themselves to determine the credibility of witnesses, to determine how far their stories are true, and from the truth of statement thus ascertained, to make all legitimate inferences, and unless their conclusions are palpably wrong, their verdict cannot be disturbed.

This defendant had a lawful right to operate its railway in the location where it was placed, and to run its cars singly, or in trains, upon its track, but it was its duty to do so, having due regard to the safety, not only of travelers upon the street, but of those who might have occasion to cross the track in driving out from the yards of houses situated along its railway. The speed at which a car or train

may properly be run, the kind of control over it and the degree of watchfulness which is imposed upon those in charge, must depend to some extent upon the surrounding conditions, such as the nearness of the track to the side of the street, and to the houses, the likelihood of persons driving out from the yards, and whether the driveways are so situated that persons driving out over them can see or learn of the approach of cars in season, with due care, to avoid collision. The defendant and its servants had a right to assume that all such persons' would themselves be in the exercise of ordinary care. While as was said in *Flewelling* v. *Railway*, 89 Maine, 593, "Electric street cars have in a qualified way at least the right of way as against persons on foot or traveling with carriages and teams in the same manner as ordinary steam railroads have," yet we think it is only "in a qualified way." The movements of their cars and trains are more easily and quickly controlled than are those of steam railroads. The speed at which they may properly travel along the highways is much less than the ordinary speed of steam railroads. Instead of a right of way exclusive except at crossings, they exercise their right of way in a public thoroughfare, to which many people must have access from their houses. And this access to the highway must in many cases, as in this, be had across the railway tracks. "Travelers with teams and proprietors of street cars still have concurrent rights and mutual obligations." *Atwood* v. *Railway*, supra.

In fine it was the duty of the defendant to this plaintiff at the time in question to use due care, in view of apparent dangers, and of those which might reasonably be expected, so to regulate the speed of its cars, so to have them under control, and so to be on the look-out for a team about to cross the track, that the plaintiff, if he was himself in the exercise of due care, should not be put in jeopardy. We do not mean to be understood as saying that a street railway company must stop or slacken the speed of its cars every time a person is seen to approach the track with apparent intent to cross it. It may properly be assumed that the traveler, if far enough away to cross safely, will continue his movements and cross in front of the car, or if not far enough away, and if warned of the approach of the car, that he will stop and let the car pass first. The person in

charge of the car must exercise due care and judgment, and the movements of the car must be regulated with reference to the apparent situation. *Tashjian* v. *Worcester Street Railway*, 177 Mass. 75. If it be apparent that a collision is likely to occur, it is the duty of the servant in control of the car to be ready to use, and to use, if necessary, and when necessary, all practicable means to prevent it. Nothing less is due care.

Now to apply these general propositions of law to such conclusions of fact as we think the jury were warranted in finding in this case. In doing this, we must, as in all cases upon motion for a new trial, take those conclusions most favorable to the verdict, provided the jury were justified in finding them. We think that the jury might have found properly that the train of cars was running much faster than six or eight miles an hour, perhaps as fast as sixteen miles an hour, and that the plaintiff was traveling at no greater speed than two or three miles an hour. If so the plaintiff's horse came within the range of view of the defendant's brakeman when he was more than two hundred feet distant from the driveway. In such case it was the duty of the brakeman to use due care in keeping watch of the movements of the horse. Nevertheless the jury might have found that the brakeman did not in fact discover the horse approaching the track until the train was only fifty or sixty feet from the crossing, when it was too late to stop the train before reaching the crossing. The jury might have found that no steps were taken to reverse the motor until the forward car reached the crossing. They might have found that to run a train of cars as fast as this one was run, with such momentum as this one had, with slack brakes, in such proximity to the Shepard house and driveway, was dangerous, and that in doing so the defendant was negligent. They might have found, as we shall notice later, that while the plaintiff was driving towards the track, apparently ignorant of the approach of the train, the defendant's servant whose duty it was to watch, had a full opportunity to see him more than two hundred feet away, and yet negligently failed to discover him until fifty feet away, when he had not even time to set his brake before the collision. They might have found that the motor was not reversed as quickly as it ought

to have been after the plaintiff was discovered. Surely if these conclusions were warrantable, and we think they were, it cannot be said that the verdict of the jury establishing the negligence of the defendant was so far unmistakably wrong.

2. Was the plaintiff guilty of contributory negligence? We think it is demonstrable that he was. He says that upon passing the corner of the house, he leaned forward, looked to the north but saw no car and heard no bell or gong. From all the testimony in the case, aided by photographs which witnesses on both sides say represent the situation correctly, it is clear that the plaintiff at the corner of the house could have seen the track at least three hundred feet distant, and the body of a car a further distance still. It is argued that his vision was interrupted while the train was passing behind the trees near the second telegraph pole, about two hundred feet north of the driveway, and that this accounts for his not having seen the train. But we think the evidence shows clearly that at no time could the entire train of three cars and motor, all fifty-nine and one-half feet in length, have been hidden by the trees, and that there was no time after the train first came in sight north of the Burgess house that the cars or some of them were not in plain sight to a person looking from the corner of the Shepard house. If we take the estimate of speed, both of himself and of the train, as contended for by the plaintiff, he will not be aided. He says his horse was walking. His counsel urge that the speed should not be estimated as greater than two miles an hour. We cannot see how it could be less, and if more it would only show that the train was still nearer than he contends. His claim is that the train was traveling at the rate of at least sixteen miles an hour. If so, the train was traveling eight times faster than he was. While he was going the twenty feet to the railway, the train would have passed over one hundred and sixty feet. In other words when the plaintiff was at the corner of the house, the head car of the train was one hundred and sixty feet from the crossing. It was in plain view, with nothing to obstruct vision, except one trolley pole. If we assume that the train was going at the rate of twenty miles an hour, it was traveling ten times faster than the plaintiff, and would have been two hundred

feet from the crossing when the plaintiff says he looked. But at two hundred feet the forward cars at least must have been in plain view of the plaintiff. For the train to have been beyond the sight of the plaintiff when he says he looked, it must have been traveling more than thirty miles an hour, in order to reach the crossing when he did. But there is nothing in the case which warrants any such estimate of speed. If the train was traveling at a speed less than sixteen miles an hour it must have been still nearer the crossing when the plaintiff came by the corner of the house.

Coming back to the evidence in the case, and taking the contentions of the plaintiff's counsel as to speed, we are forced to one of two conclusions, — either that the plaintiff, if he looked for cars, saw the train less than two hundred feet away and moving towards the crossing; or that he did not look at all to the north. We do not think it possible under the given conditions that he could have looked, as he says he did, without seeing the train, and it seems incredible, if he looked and saw the train, that he would have proceeded in the manner he did. In our view it is immaterial which horn of the dilemma is the true one. The plaintiff's conduct, his sitting back on the seat of the wagon where he could not see the track, his driving at a walk as he says right in front of the coming train, his apparent indifference to the train, all point to the conclusion that he was not aware of the proximity of the train, as he would necessarily have been if he had looked.

While the rule that a traveler must look and listen before passing over a railroad crossing has been held not applicable to street railroads, *Fairbanks* v. *Railway*, 95 Maine, 78; *Warren* v. *Railway*, 95 Maine, 115, still it is necessary that a traveler approaching a street railroad crossing is bound to exercise some care to avoid danger of collision. He must exercise ordinary care, the care of an ordinarily prudent man, in view of all the existing conditions. He must take into account the probability of cars being near at the time, and the opportunities for observing them. He must have regard to his own speed, and must take some notice of the apparent speed of the approaching car, if seen. It is not necessarily negligence for a traveler to cross a track in front of an approaching car, even if he has

misjudged its distance and speed, *Coleman* v. *Railway*, 181 Mass. 591; *Driscoll* v. *Railway*, 159 Mass. 142. Whether a traveler in such a case is negligent depends upon the facts in that case. But he must exercise due care and judgment about it. He cannot sit under cover and not look, or if he looks, not see a car plainly before his eyes, and have no care whatever, and then say he has fulfilled the measure of the law.

The plaintiff owed it to himself and to the defendant to exercise reasonable care to anticipate and avoid a collision. If the plaintiff saw the train of cars approaching the crossing, less than two hundred feet away, as we think he must have done if he looked, and then settled back into his seat out of sight of the cars, and drove onto the track at a walk, without taking any care to observe the further approach of the cars, it was a reckless proceeding on his part, and we think it impossible to hold that he was not negligent.

On the other hand, if he drove out of the yard without looking, or ascertaining in any way whether cars were near, or without doing any act or employing any sense in an endeavor to ascertain whether crossing the track would be safe or otherwise, we think he was negligent. Upon this hypothesis the case shows that the plaintiff did not see, but that he sat back under the cover of his wagon where he could not see. He was clearly inattentive, for he did not know of the train at all until the moment of collision. He did not even hear the buzz of the electricity which must have been audible at some distance to an attentive ear. It is no answer to say that the plaintiff was justified in his inattention by the fact that no regular car was due there at that time, for it appears that the plaintiff knew that the defendant was running trains of lime-rock cars. These trains were run at irregular times,—sometimes before a passenger, sometimes after,— and sometimes, with a greater interval, between regular cars. And in any event the defendant had the right to run cars when it chose, and it was the duty of the plaintiff to exercise some care to look out for them. He could not be entirely inattentive.

3. It being demonstrably clear in our judgment that the plaintiff was guilty of contributory negligence, the verdict in his favor is

wrong and must be set aside, unless it appears further that after the plaintiff's negligence, and independent of and distinct from any prior negligence of its own, the defendant was negligent, and that this negligence was the proximate cause of the plaintiff's injury. In other words the plaintiff must show that, at some point of time, in view of the entire situation, including the plaintiff's negligence, the defendant was thereafter culpably negligent, and its negligence the latest in the succession of causes. In such case the plaintiff's negligence would not be proximate cause of the injury. If the evidence justifies that conclusion, we must assume that the jury adopted this view, for in no other way can the verdict be reconciled with law.

As already stated, in the consideration of the defendant's negligence, we think the jury were authorized to find that during the whole time the horse and wagon of the plaintiff were passing from the corner of the house to the track, they were in plain sight of the brakeman on the front car of the train; that the plaintiff's horse was walking slowly, while the train was moving rapidly; that the plaintiff himself was out of sight, all of the time, and gave no sign that he was aware of the approach of the train. And, if after the brakeman, whose duty it was to watch as well as to brake, came in sight of the team, he saw the team approaching the track, and saw that the driver was apparently negligent, inattentive or ignorant of the train, neither stopping for the train to pass, nor apparently endeavoring to cross before the train, and if at such a time, and under such conditions there was apparent danger of a collision by reason of the plaintiff's negligence, and if there was then time to stop the train, it was unquestionably the duty of the brakeman, then, by signalling, and by braking, to stop the train.

But even if the brakeman, seeing the situation, failed seasonably to take the necessary steps to prevent a collision which was apparently not only likely to happen, but all the more likely to happen, and which probably would happen, because of the apparent negligence or ignorance of the plaintiff, was his failure the proximate cause of the plaintiff's injury? Was his negligence in that respect subsequent to and independent of the plaintiff's contributory negli-

gence? We are constrained to say that it was not. It was contemporaneous, not subsequent. It operated to produce the result in connection with the plaintiff's negligence, and not independently of it. The plaintiff's negligence actively continued from the corner of the house to the point of collision. It was operative to the last moment and contributed to the injury as a proximate cause. It is not like the case of one who by his own prior negligence has merely put himself in a position of danger, as in *Atwood* v. *Railway Co.*, 91 Maine, 399, and *Ward* v. *Railway Co.*, 96 Maine, 145, in which cases the distinction is well illustrated. The plaintiff not only negligently put himself in a place of peril, but continued negligently to move on to the catastrophe until it happened. The language of the doctrine of prior and subsequent negligence implies that the principle is not applicable when the negligence of the plaintiff and that of the defendant are practically simultaneous. It was so stated, and the distinction was pointed out, in *Ward* v. *Railroad Co.*, supra, where the Court used this language, "It is not enough that the defendant might by the exercise of due care on his part have avoided the consequences of the plaintiff's negligence when that negligence is contemporaneous with the fault of the defendant. But if the plaintiff's negligence is so remote as not to be a proximate cause contributing to the injury, then a defendant's failure to exercise due care to avoid the consequences of the plaintiff's earlier and remote negligence when by the exercise of such care they could have avoided, will render the defendant liable." *Rider* v. *Syracuse R. T. Ry. Co.*, 171 N. Y. 139; *Fritz* v. *Railway Co.*, 105 Mich. 50; *O'Brien* v. *McGlinchy*, 68 Maine, 552.

<em>Motion for new trial sustained.</em>