LESLIE H. LEAVITT *vs.* IRENE M. SEANEY, et al.

Penobscot.    Opinion February 27, 1915.

*Acreage.    Agent.    Boundary.    Deceit.    False.    Misrepresentations.    Representations.    Sale of Farm.    Title.*

During the negotiations for the sale of the land between the parties, the defendant, M. A. Seaney, knew where the true boundary was and he knew that the fence, which the defendant pointed out to the plaintiff, was not the northerly boundary of his land, but included land not owned by him.

*Held:*

1.    That if the defendant did falsely point out, as the boundaries of the land, he was endeavoring to sell the plaintiff the fence the plaintiff claims he did, the plaintiff had the right to believe that fence to be the true boundary.

2.    Where a vendor of land undertakes to state or point out to a purchaser the boundaries of property he is selling, he is bound to state or point them out correctly.

3.    If the defendant did point out the boundary as claimed by plaintiff, he did not point it out correctly, but knowingly pointed out to plaintiff a false boundary for the purpose of deceiving the plaintiff.

4.    It appears from the testimony that M. A. Seaney was acting as the agent of his wife, I. M. Seaney, who owned the land, in the sale thereof to the plaintiff; therefore, she was liable for such acts of her agent as were done within the scope of his authority as agent.

5.    The principal is liable to third persons in a civil suit for frauds, deceits, concealments, torts, negligence and other malfeasance, and omissions of duty in his agent in the course of his employment, although the principal did not authorize, justify or participate in, or indeed know of such misconduct, or even if he forbade them or disapproved of them.

6.    In such case, the principal holds out his agent as competent and fit to be trusted; thereby, in effect, he warrants the fidelity and good conduct in all matters of his agency.

On motion by defendant for a new trial; motion overruled.

This is an action on the case for deceit in the sale of a farm by defendants to plaintiff, situate in Newburg, in the county of Penobscot. The defendants plead the general issue. The jury returned a verdict for the plaintiff of $250.00, and the defendants filed a general motion for a new trial.

The case is stated in the opinion.

*F. W. Halliday*, for plaintiff.

*W. H. Mitchell, and George E. Thompson*, for defendants.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

HALEY, J. An action on the case; for deceit in the sale of a farm in the town of Newburg, in the county of Penobscot, purchased by the plaintiff of the defendants May 18, 1912, at which time the legal title to the farm was in the defendant, Irene M. Seaney, the wife of the defendant, M. A. Seaney. The case was tried to a jury at the April term of the court at Penobscot, the verdict was for the plaintiff, and the case is before this court upon a motion to set aside the verdict as against law and evidence.

It was the claim of the plaintiff that, at the time of the negotiations for the property, he was informed that the property was the homestead farm of Martin Miller, deceased, in his lifetime; that it contained fifty acres, more or less, and the deed that was given so states. The property that the plaintiff received by the deed contained only between twenty-five and twenty-six acres, a part of the Martin Miller homestead not being included in the deed. Before the purchase of the property the plaintiff went upon it with the defendant M. A. Seaney and Mr. Rice, at which time he claims, and testified, that the representations as to the former ownership of the land; the acreage and the other misrepresentations were made; that the defendant M. A. Seaney, after showing him parts of the farm from the highway that surrounded it upon two sides, put up the team in which they had driven to the farm, then went out back of the barn, and that Mr. Seaney stood up on a high knoll and said, "My land runs to the town line, pointing to the further fence," the witness at the time referring to the fence shown upon the plan. He further testified: "He spoke of the fence, we couldn't discern any fence in

particular, but that fence, it was plain to be seen where we stood,"
and he supposed the defendant was pointing to the fence as the
boundary of the lot.   The lot, as deeded to the plaintiff, was bounded
upon the north by the town line upon which there was a fence, and
it appeared in the case that upon the north side of the farm there was
a gully, that the town line ran through that gully, that there was a
fence along the line, but that it was concealed to a great extent by
the bushes that grew on the low land and was not observable from
the knoll where they stood when the defendant pointed out to the
plaintiff the fence to which, as the plaintiff claims, he stated his land
ran.   Between the boundaries as given in the deed, and as the plain-
tiff claimed they were pointed out to him by the defendant, there was
a tract of land containing about seventeen acres of grass and wood
land.

The defendant M. A. Seaney testified in regard to the conversation
in reference to the boundaries, "I says, the fence is right up there,
you can see it; if you get out of it you have got to get over it.   It
was just as plain as that railing."

During the negotiations for the land between the parties, the
defendant M. A. Seaney knew where the true boundary was, and he
knew that the fence which the plaintiff claimed he pointed out to him
was not the northerly boundary of his land, but that it included land
not owned by him and that he did not intend to convey and did not
convey by the deed given to the plaintiff.   If the defendant did
falsely point out, as the boundaries of the land he was endeavoring
to sell the plaintiff, the fence that the plaintiff claims he pointed to,
the plaintiff had the right to believe that fence to be the true bound-
ary, for when a vendor of land undertakes to state or point out to a
purchaser the boundaries of property he is selling, he is bound to
state or point them out correctly.   If the defendant did point out
the boundary as claimed by the plaintiff, he did not point it out
correctly, but knowingly pointed out to the plaintiff a false boundary,
and it must have been for the purpose of deceiving the plaintiff, as
the plaintiff testifies he was deceived.

It was a question of fact for the jury whether the fence as claimed
by the plaintiff was pointed out and represented as the boundary of
the land or not.   If it was, it was a material misrepresentation of an
existing fact, and knowingly made to deceive the plaintiff.   The
jury saw and heard both the plaintiff and the defendant, and having

observed their appearance upon the stand and weighed their testimony, by their verdict have said that the plaintiff's version is true. Their judgment upon that disputed fact is binding upon this court, as the testimony is not so strong to the contrary as to show they were influenced by prejudice, bias, passion or by mistake, the evidence being of that character that they may well have, after having weighed it, concluded that the plaintiff's version was right.

The defendant contends that Mrs. Seaney cannot possibly be guilty in this action, since the plaintiff has not shown wherein she has had anything to do with the sale except to sign the deed, and to tell Mr. Rice over the telephone that her business affairs relating to the property were handled by her husband. In addition to her statement over the telephone as above, she stated upon the stand that her husband did her business, and her husband testified that in doing the business he acted as her agent. So the fact of the agency must be considered as established. As the husband was the agent of the wife in the sale of the property, she was liable for such acts of her agent as were done within the scope of his authority as agent. *Rhoda* v. *Annis*, 75 Maine, 17.

"The principal is also liable to third persons in a civil suit for frauds, deceits, concealments, torts, negligence and other malfeasances and omissions of duty in his agent in the course of his employment, although the principal did not authorize, justify or participate in, or indeed know of such misconduct; or even if he forbade them or disapproved of them." In every such case, the principal holds out his agent as competent and fit to be trusted; thereby, in effect, he warrants the fidelity and good conduct in all matters of his agency." Storey's Agency, Secs. 452, 453; *Stickney* v. *Munroe*, 44 Maine, 195.

*Motion overruled.*