JOHN H. GOWAN, AS FATHER OF JOHN GOWAN, JR., A MINOR v. WILLIAM G. McADOO, DIRECTOR GENERAL OF RAILROADS.[1]

July. 11, 1919.

No. 21,265.

**Railway — grade crossing — negligence of defendant.**

1. Railroad companies are required by G. S. 1913, §§ 4256, 4257, to maintain grade crossings in a safe and passable condition, easy for teams and vehicles to cross, and to maintain planks between the rails level with the tops of the rails. The planking at a crossing was below the required level and the runners of a sleigh driven over it would stick on the rails, thus retarding its motion. *Held* that if, as a consequence of the condition described, an occupant of a sleigh was injured because it was delayed in getting over the crossing in time to escape being struck by an approaching train, the railroad company would be liable to him for negligence in the maintenance of the crossing.

**Same — duty of company to keep sharp watch.**

2. A vigilant outlook should be kept in operating trains where the presence of persons on or near the track is to be anticipated as reasonably probable, notwithstanding the fact that a railroad company has the right of way at highway crossings. This right of precedence does not impose upon the traveler the whole duty of avoiding collisions, but both parties must exercise reasonable care to prevent injury.

**Same — evidence of negligence of train men.**

3. A jury may properly find that a train was negligently operated if it was run at a high rate of speed over a much traveled village highway crossing where it struck a sleigh, which neither the engineer nor fireman observed until the team was on the track, although for a mile north of the crossing the track was straight, the train was running south, the

[1] Reported in 173 N. W. 440.

team was approaching the crossing at a walk and might have been seen by the fireman after it reached a point 21 feet from the track.

### Same — gates at grade crossing — question for jury.

4. Whether, in the exercise of reasonable care, a railroad company should maintain gates, a bell, or a flagman at a grade crossing, depends upon the circumstances of each particular case and may present a question for the jury; even though the maintenance thereof is not required by any statute, ordinance or order of the Railroad and 'Warehouse Commission.

### Action by injured child —negligence of driver and of company.

5. The fact that the driver of a vehicle used to carry school children to and from school, was guilty of negligence in driving upon a railroad track at a highway crossing, does not defeat a recovery against the railroad company by a child injured because the engine struck the vehicle, if the company was also guilty of negligence which concurred with that of the driver to bring about a collision and it would not have taken place but for such concurring negligence.

### Special findings sustained by evidence.

6. The evidence sustains the special findings of the jury and there were no errors in the instructions given by the court.

### Substitution of Director General of Railroads as defendant.

7. Following Lavalle v. Northern Pacific Ry. Co. supra, page 74, it is *held* that the court erred in dismissing the action as to the railroad company, which was named as the original defendant, and substituting the Director General of Railroads as defendant.

Action in the district court for Carlton county, to recover $3,000 for injuries received by plaintiff's minor son. The answer alleged that the driver of the vehicle was incompetent and that his carelessness and negligence caused the collision. The case was tried before Dancer, J., and a jury which answered in the affirmative these questions: Whether defendant was negligent in the maintenance of the planking between the rails; whether defendant gave proper signals by blowing the whistle and ringing the bell; whether the train was run at a negligent rate of speed; whether defendant was negligent in failing to have a safety gate or flagman or crossing bell at the crossing; whether both the engineer and fireman, or either, were negligent in failing to keep a proper lookout, and questions whether each of these omissions or acts was a direct and proximate cause of the accident; and returned a verdict for $3,000. Defend-

ant's motion to amend the verdict by substituting William G. McAdoo, Director General of Railroads, as defendant, and that the action be dismissed as to the Northern Pacific Railway Company was granted. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. From an order substituting the Director General of Railroads as defendant and dismissing the action as to the railway company, plaintiff appealed. Affirmed on defendant's appeal; reversed on plaintiff's appeal.

*Charles Donnelly* and *D. F. Lyons,* for appellant.

*Tautges, Bissell & Wilder,* for respondents.

LEES, C.

At Barnum in this state, on February 1, 1918, a sleigh carrying school children to their homes was struck at a grade crossing by the engine of a passenger train of the Northern Pacific Railway Company. Seven of the children were killed and others were injured. A number of actions were brought against the company on account of the accident. Among them was one by plaintiff in behalf of his minor son, who was injured. There was a verdict in his favor, and defendant appeals from an order denying a new trial.

After the verdict was returned, on the application of the railway company, an order was entered dismissing the action as to it and substituting William G. McAdoo, as Director General of Railroads, as defendant. From this order, plaintiff appeals.

There were five charges of negligence. Each was submitted to the jury for a special finding with reference thereto. It was found: (1) That defendant was negligent in maintaining the planking at the crossing; (2) in running its train at a negligent rate of speed; (3) in failing to have a safety gate, flagman, or bell at the crossing; (4) that either the engineer or fireman negligently failed to keep a proper lookout as the train approached the crossing, and that each of the acts or omissions above specified was a proximate cause of the accident; (5) that the whistle was blown and the engine bell kept ringing as the train approached the crossing. Each of these findings except the last is attacked by the defendant.

The following instruction was given: "Plaintiff must prove at least that the defendant was negligent in one of these five respects, and that negligence in that particular respect was a direct and proximate cause

of the accident," and the further instruction that, if such proof was made, plaintiff was entitled to recover. No exception to these instructions was taken and their correctness is not questioned on this appeal.

The statute requires railroad companies "to construct and maintain * * * sufficient crossings," wherever their lines cross a public highway. Planks must be laid between the rails and their surface must be level with the top of the rails. Crossings must be kept "in a safe and passable condition * * * easy for teams with loads and other vehicles" to cross. G. S. 1913, §§ 4256, 4257. A number of witnesses testified that at the place of the accident the planks were 1 or 1½ inches below the top of the rails, and that, in driving across the track with a load, the runners of a sleigh would stick on the rails. There was no direct evidence that this happened at the time of the accident, but the jury might infer that it did because it happened on previous occasions.

Some of the witnesses estimated the speed of the train at the time of the accident at 40 miles per hour; others at 60 miles per hour. Its last stop before reaching Barnum was at Carlton. It left there nine minutes late. It was scheduled to leave at 3:08 p. m. and to reach Barnum at 3:34 p. m. The distance between the two stations is 18 miles. About two minutes of the lost time was made up on the run between them.

Barnum has a population of about 400. All travel to and from the territory west of the village passes over the crossing where the accident occurred. The driver of a vehicle coming from the east would have his view of the track to the north obstructed by cattle pens and by some lumber and pulpwood piled on the right of way near a sidetrack on the day of the accident. The day was windy and there was some snow in the air. There was no crossing bell, gate or flagman.

There are 19 assignments of error. They are principally addressed to the question of the sufficiency of the evidence to justify a finding that defendant was negligent in any respect.

1. If the crossing was in the condition described by plaintiff's witnesses, it is evident that a loaded sleigh could not pass over it as quickly and easily as though the planks were level with the rails. Its progress would be appreciably delayed by the sticking of the runners on the rails. The sleigh had almost gotten over the track when it was struck, and the jury might well find that its progress was retarded enough to prevent it from

getting safely over and that, if it had not been so retarded, there would have been no accident. Belshan v. Illinois Central R. Co. 117 Minn. 110, 134 N. W. 507.

2. There was a space of 21 feet between the main track and the track east of it leading to the stock pens over which the fireman on an engine running south would have an unobstructed view. As the team and sleigh were approaching the crossing they could have been seen by the fireman after the train reached a point about one mile north of the crossing. His testimony was that he did not see the horses until just as they came on the main track, while the engineer testified that he did not see them until their heads came up by the engine on his side and that the crash came before he could apply the brakes, although he applied them as soon as he saw the horses. The jury could have found that the train was running at the rate of 60 miles per hour. If it was, it would take one minute to cover the one mile stretch of straight track north of the crossing. While running that distance the fireman failed to see the team until it was too late to avert the accident. The team must have been within his range of vision after it reached a point 21 feet east of the crossing. The evidence showed that the horses were walking at a moderate pace as they came up to the crossing. There was basis enough in these facts for a finding that the train was run at an excessive rate of speed and without keeping such a lookout as the circumstances required. Miller v. Minneapolis & St. Louis R. Co. 106 Minn. 499, 119 N. W. 218; Kommerstad v. Great Northern Ry. Co. 128 Minn. 505, 151 N. W. 177; Lawler v. Minneapolis, St. P. & S. S. M. Ry. Co. 129 Minn. 506, 152 N. W. 882; Zenner v. Great Northern Ry. Co. 135 Minn. 37, 159 N. W. 1087. It is generally held that a vigilant lookout should be kept in operating trains where the presence of persons upon or near the track should be anticipated as reasonably probable. Chicago, B. & Q. R. Co. v. Cauffman, 38 Ill. 424; Johnson v. Chicago & N. W. Ry. Co. 49 Wis. 529, 5 N. W. 886; Smith v. Norfolk & S. R. Co. 114 N. C. 728, 19 S. E. 863, 923, 25 L.R. A. 287; Illinois C. R. Co. v. Murphy's Admr. 123 Ky. 787, 97 S. W. 729, 11 L.R.A. (N.S.) 352.

Owing to the momentum of trains and the necessities and public nature of railroad traffic, a railroad company has the right of way at highway crossings. St. Paul Southern Electric Ry. Co. v. Flanagan, 138

Minn. 123, 164 N. W. 584. And its engineers and firemen have the right to assume that an adult on or approaching the track will exercise due care to avoid injury. But the right of precedence which the company possesses does not impose upon the traveler the whole duty of avoiding collisions. Both parties must exercise reasonable care to prevent injury. Continental Improvement Co. v. Stead, 95 U. S. 161, 24 L. ed. 403; Purinton v. Maine C. R. Co. 78 Me. 569, 7 Atl. 707; Lehigh Valley R. Co. v. Brandtmaier, 113 Pa. St. 610, 6 Atl. 238; 3 Elliott, Railroads, § 1153. In the case at bar, if the fireman had kept a proper lookout, he should have observed that the driver of the team, oblivious of imminent danger, was about to cross the track in front of the swiftly oncoming train. Had he observed this, the speed of the train might have been slackened enough to avert the collision.

3. The law relating to the duty of a railroad company to maintain gates or a crossing bell, or keep a flagman at highway crossings, was recently considered in Zenner v. Great Northern Ry. Co. and Lawler v. Minneapolis, St. P. & S. S. M. Ry. Co. supra. The facts in those cases were unlike those in the case at bar. In the former, the usual train signals were given but the crossing was the busiest in a city of 10,000 inhabitants. In the latter, it did not appear that any signals were given as the crossing was approached. Here, the usual signals were given and the crossing was located in a village with less than 500 inhabitants. Under these circumstances the court left it to the jury to determine whether ordinary care required the company to maintain gates, a bell or a flagman at this crossing. This was correct in view of the principles stated in the Zenner case. While it is true that neither by statute nor by order of the Railroad and Warehouse Commission was the company required to maintain a crossing bell, or any other means of warning travelers of the approach of its trains, it must be remembered that the statutes only prescribe the minimum of care required. Whether it exercised the required degree of care in view of the location of the crossing, the conditions surrounding its maintenance and the rate of speed at which trains were run over it, was a question for the jury to pass upon. 3 Elliott, Railroads, § 1157.

4. The contention most strenuously made by defendant is in substance this: The sleigh was in charge of one Carl Miller, who was under con-

tract with the school district to transport children living west of Barnum to and from school. The body of the sleigh was covered with canvas. There was a door in the rear and one in front with two panes of glass in it through which the driver had a view of the road ahead of him. There were no openings of any sort in the sides. It was impossible for the driver, who sat inside the inclosure, to see to the right or the left, except within the limited angle of vision permitted by the glass in the door in front of him. Seated on a chair behind the door, Miller drove upon the crossing, unable to look up or down the track, without stopping to send one of the children ahead to look for a train. A witness testified that the arm of the semaphore north of the crossing was down and that Miller's attention was called to it, but he did not stop. He himself testified that he did not see or hear the train before it was upon him, when his horses plunged ahead to get over the track, but failed to pull the sleigh completely over before the engine crashed into it.

Of Miller's gross negligence there can be no question, but, while his responsibility for the disaster is apparent, it was not brought about solely by reason of his negligence or by reason of the negligence of those who permitted a vehicle covered as this was to be used in carrying school children almost daily across a railroad track. It is well settled that where the negligence of two persons concurs in causing an injury to another and such injury would not have been suffered but for the negligence of both, each is liable to the person injured. 2 Dunnell, Minn. Dig. § 7006. This court has recently stated the rule as follows: "Where several concurring acts or conditions, one of them a wrongful act or omission, produce an injury, such wrongful act or omission is to be regarded as the proximate cause of the injury, if it be one which might reasonably have been anticipated from such act or omission, and which would not have occurred without it. Vills v. City of Cloquet, 119 Minn. 277, 138 N. W. 33. See also Bibb Broom Corn Co. v. Atchison, T. & S. Fe Ry. Co. 94 Minn. 269, 102 N. W. 709, 69 L.R.A. 509, 110 Am. St. 361, 3 Ann. Cas. 450, and Fairchild v. Fleming, 125 Minn. 431, 147 N. W. 434.

5. We find no error in the rulings of the trial court or in the instructions to the jury to which other assignments of error are directed, and conclude that the motion for a new trial was properly denied.

6. Plaintiff's appeal from the order substituting the Director General of Railroads as defendant presents the question decided in and is controlled by Lavalle v. Northern Pacific Ry. Co. supra, page 74.

The order denying the motion for a new trial is affirmed and the order dismissing the action as to defendant railway company and substituting the Director General of Railroads as defendant is reversed.