Susie A. Chenery *vs.* John O. Russell.

William N. Chenery *vs.* John O. Russell.

Edith M. Russell *vs.* William Chenery.

John O. Russell *vs.* William Chenery.

John O. Russell *vs.* William Chenery.

Cumberland.        Opinion July 20, 1933.

*William B. Mahoney,*
*Theodore Gonya,* for Chenerys.
*Verrill, Hale, Booth & Ives,* for Russells.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

DUNN, J. These actions were tried together, in the Cumberland Superior Court. The automobile collision out of which they grow, occurred early in the afternoon of November 5, 1932, in a suburb of Portland, on the main highway to Gray. William N. Chenery owned, and was driving one of the vehicles, a Pontiac coupe, southerly, in the direction of Portland. He was accompanied by his wife. Both were injured, and the automobile damaged. In his action against John O. Russell, the owner of the other car, who himself was operating it, Mr. Chenery recovered a verdict. The award of damages, $4,231.50, was for serious personal injuries, property damage, and expense and loss by reason of injuries to Mrs. Chenery, whose own verdict, for bodily hurts, was $220.00. Neither award, it may be noted, is insisted excessive.

The other car was an Oldsmobile sedan. It was proceeding along the highway, in a northerly course. Mrs. Russell, who was riding with her husband, was slightly injured. The automobile was damaged. In the three actions brought by the Russells, verdicts were for the defendant.

All five actions are presented to this court by the Russells, on motions for new trial.

Contention is that the verdicts are so clearly wrong that they should be set aside as against the evidence; the movents insist that the version of the accident which the jury accepted, and on which the verdicts are rested, was completely overwhelmed by opposing proof.

The Chenerys based their claims to recover, and their defenses, upon the predicate that, as the cars were about to meet, Mr. Russell, who had his head turned toward his wife, negligently per-

mitted his car to pass across from approximately the medial line of the road, to his left of the middle, and there collide with the approaching Chenery car.

The Russells claimed that as the cars were meeting, the rear of the Chenery car, skidding to the left, came almost entirely across the tarvia road, the width of which was twenty-four feet, and struck the Russell car. The declarations in their writs allege negligence on the part of Mr. Chenery, in driving at what, because of the slippery condition of the highway after a shower, was an excessive rate of speed.

There was testimony that the rough treads which had originally been on the rear tires of the Chenery car were worn smooth. Mr. and Mrs. Chenery both denied that their car skidded, and witnessed that to the time of the accident, the car was on its extreme right side of the way.

The left side of the Chenery car was struck on and behind the door, causing the door to open, Mr. Chenery falling onto the road. The rear left wheel of the car was demolished. The damage to the Russell car was of the left lamp, the mudguard on that side, and the rim of the front left wheel, which, for an inch or two, was bent. Immediately after the accident, the Chenery car was crosswise of the road, heading easterly, and closely diagonal to the rear of the Russell car. It was stated on the witness stand, by Mr. and Mrs. Chenery, that the impact of the Russell car turned the Chenery car, and that after the collision Mr. Russell quickly swerved his car to its proper side of the road.

On the other-hand, Mr. and Mrs. Russell testified that their car had continuously been far to its right-hand side.

Where the accident happened was the underlying issue. Each plaintiff relied upon a violation of the "rule of the road". In the foreground, then, the collision occurred either on the Chenery side, or on the Russell side of the highway.

The only eyewitnesses, aside from the Chenerys and Russells, were Mrs. Annie Aldrich and her granddaughter's husband, Gerald Harris, who was driving her car, in the same direction as, and one hundred and fifty to two hundred feet behind, the Chenery car. Their statements, as witnesses, as to where and how the accident happened, were corroborative of the contention of the Russells.

Mrs. Aldrich and the Chenerys had lived across the road from each other for fourteen years. There had been a lawsuit by Mr. Chenery against Mrs. Aldrich; they "were not on speaking terms", and "hard feelings" existed.

There was evidence sufficient to sustain the verdicts in favor of Mr. and Mrs. Chenery. True, there was, in a sense, more evidence the other way. But, after much deliberation, the conclusion of this court is that the verdicts must stand, even though the court in the first instance might have come to a different conclusion.

It is the peculiar duty of the jury to determine issues of fact, being guided in their deliberations by instructions of law announced by the trial court, applicable to the facts which the evidence adduced in the cause tends to prove. The jury has the advantage of seeing the witnesses, of hearing their testimony orally delivered, of observing their demeanor and conduct upon the stand, and considering prejudice, if any is shown.

To be sure, the verdict of a jury should be responsive to a fair preponderance of the evidence. The expression does not, however, mean the mere numerical collection of witnesses, but it means weight, credit, and value. *Wilcox* v. *Hines* (Tenn.), 45 S. W., 781, 66 A. S. R., 761. The weight of evidence is not a question of mathematics, but depends on its effect in inducing belief. One witness may be contradicted by several, and yet his testimony may outweigh all of theirs. The question is what is to be believed. *Braunschweiger* v. *Waits*, 179 Pa. St., 47, 36 A., 155.

Where, on motion for a new trial, the court finds that the verdict, upon a material issue of fact, is against the evidence, the logical and necessary result of such finding, as matter of law, is that the verdict must be set aside. This is a necessary counterbalance to protect litigants against jurors, when they have failed in their verdict to do justice, and to enforce the right of the case under the evidence.

This rule has, however, no application here. Whatever our own views may be, we hesitate, on the cold print of the record, to array them against those of the twelve men who, on the conflicting evidence, are the triers of the facts; in construing and weighing the evidence tending to support the verdict, they, presumably, acted properly, and were not improperly influenced.

It is not a sufficient ground for a new trial that the appellate court, from a consideration and examination of the testimony, might have arrived at a different result, but the verdict must be manifestly and palpably against the evidence. *Googins* v. *Gilmore*, 47 Me., 9; *Purington* v. *Maine Central Railroad Company*, 78 Me., 569, 7 A., 707; *Jameson* v. *Weld*, 93 Me., 345, 45 A., 299; *Butler* v. *Rockland, etc., Railway*, 99 Me., 149, 58 A., 775; *Roy* v. *Bellevieu*, 118 Me., 495, 108 A., 70; *Day* v. *Isaacson*, 124 Me., 407, 130 A., 212.

The motions for new trial, filed by Mr. Russell in the cases in which he was defendant, must be overruled.

With respect to the motions in the actions in which he was plaintiff, and that in which his wife was plaintiff, the conclusion of the jury that neither had sustained the burden of proof, should not be disturbed. The weight of the evidence was for the jury. *Lewiston Trust Co.* v. *Cobb*, 115 Me., 264, 98 A., 756; *Clark* v. *Dillingham*, 116 Me., 508, 102 A., 36.

> *Each motion overruled.*
> *Judgment on each verdict.*