ZINA M. WITHAM

*vs.*

CLEMENT N. QUIGG

Kennebec.   Opinion, January 8, 1951.

*Locke, Campbell, Reid and Hebert,*
*James L. Reid,*
*Robert O'Connor,* for plaintiff.

*Sanborn and Sanborn,*
*Richard L. Sanborn,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J.   This case is before the Law Court on motion for a new trial filed by the defendant after jury verdict for the plaintiff in Superior Court for Kennebec County.   The

writ alleges trespass by the defendant on land of the plaintiff fronting on Bangor Street in Augusta, Maine, and this alleged trespass depends upon the construction of the language in a deed from plaintiff to defendant dated November 29, 1933, which deed conveyed certain property located in the rear of plaintiff's property and granted defendant a right of way across plaintiff's land in the following language:

> "A right of way is hereby conveyed to the said Clement N. Quigg, his heirs and assigns forever, on the northerly side of lot of said grantor which is clearly defined on the face of the earth and now in use."

An examination of the record discloses the following facts which may have some bearing in the interpretation of the language describing the disputed right of way.

Sometime in 1930 plaintiff acquired certain property on the east side of Bangor Street in Augusta, Maine. Plaintiff used this property in the operation of a filling station and in the rear of the said property plaintiff had constructed a three-car wooden garage. The northerly side of plaintiff's property was subject to a certain right of way granted to one Hayden in order to enable the occupants of the Hayden property to use a certain small garage located in the rear of the Hayden property and adjoining the plaintiff's property on the north.

On October 17, 1932, the plaintiff, in writing, leased to the defendant said three-car garage and the record indicates that the plaintiff knew that the defendant was to conduct a general garage business on the property so leased. This lease remained in effect until November 29, 1933, when the plaintiff deeded to the defendant the rear lot together with the buildings thereon and granted defendant the right of way hereinbefore set forth. The record shows

that defendant conducted on the premises the same type of of a small general garage business by himself and that he used the northerly side of plaintiff's lot as a means of ingress and egress. Defendant claimed that he used all of the plaintiff's land lying between the northerly side of the filling station building and the Hayden line for the purposes of ingress and egress. The distance between the northerly side of the plaintiff's filling station building and his northerly line is stipulated to be 26.6 feet of which about four feet was used by a flight of stairs which led from the ground to the second floor of plaintiff's filling station building in which there was an apartment where the plaintiff formerly lived and subsequently where some of plaintiff's tenants lived. The space actually left, taking out the flight of stairs, therefore, would be 22.6 feet which defendant claimed he used during the period that he had the property under lease and after he purchased it and received the deed hereinbefore mentioned. The plaintiff denies this and states that he at all times had his car parked alongside the flight of stairs and that many times cars were parked two deep and that the defendant actually used about ten, twelve or fifteen feet of the plaintiff's premises on the northerly side of the lot near the Hayden line. The record shows that the average car is about six feet wide and that if there were two cars parked alongside or double breasted there would be left for the defendant to use approximately ten feet which was the clearly defined right of way then in use (meaning as of the date of the deed). The record shows that there were no marks to indicate the width of the right of way and that neither the plaintiff or defendant ever discussed the width of that right of way other than the fact that it would be along the northerly side of the plaintiff's property, except there was some conversation with respect to the width of the so-called Hayden right of way which appears to be understood by both plaintiff and defendant to be eight feet in width.

There was also some conversation at the time of the making of the deed between plaintiff and defendant with respect to the plaintiff's reserving an eight foot right of way on the westerly side of the lot plaintiff sold defendant, but apparently the record does not show that the width of the right of way granted the defendant by the plaintiff on the northerly side of plaintiff's lot was ever discussed other than that plaintiff and defendant were to swap rights of way. The record discloses that the plaintiff and defendant carried on their respective businesses from 1932 until 1949 without any question of use of the right of way to the street and in the meantime defendant had constructed a brick garage in the rear of the property purchased from the plaintiff and plaintiff had built additions onto his filling station building extending it towards the rear of plaintiff's lot. There is evidence to show that plaintiff put his extension on his filling station building at an angle to more or less accommodate both the defendant and himself, at least he so testified. The record shows that defendant's business increased and that during the early years when he was doing a small general garage business not too many trucks were serviced but in later years he began to work on large trailer trucks or so-called van trucks and the record discloses that there was considerable difficulty turning these trucks so that they would not hit plaintiff's building and do damage thereto. The record clearly shows that a certain amount of friction developed along in 1949 and it became necessary for both plaintiff and defendant to ascertain just what the language in the deed dated November 29, 1933, did mean with reference to the width of the right of way. There is no question from the record but what defendant used a much larger portion of the 26.6 foot strip during the years from 1932 to 1949 than what the plaintiff claimed he granted defendant but plaintiff states that defendant's use was by sufferance and toleration and for accommodation. The plaintiff in order to bring the matter

to a head, after some discussion with the defendant, erected a so-called fence extending from the north side of his filling station building out into the disputed strip and the defendant promptly knocked the fence down whereupon plaintiff commenced the instant action on the case of trespass. The case was ably tried by both parties and it must be assumed that the instructions of the court were correct because no exceptions were taken to the charge of the presiding justice. The jury was instructed to bring in both general and two special verdicts and the special verdicts were framed in such a way that the jury could determine from the evidence what was the width of the right of way granted by the plaintiff to the defendant in two sections, the one, the section from the street to a point opposite the stairway which protruded four feet from plaintiff's filling station building, the second, the width from that point to the rear of plaintiff's property. The jury brought in a general verdict for the plaintiff and two special verdicts and found that the width of the right of way from the street to the point opposite the stairway was ten feet and from that point to the rear of plaintiff's land the right of way was twelve feet. The defendant, believing that the jury's findings were in error, now brings the matter forward to this court on motion. It should also be noted that the jury took a view of the premises prior to the trial.

In cases like the one at bar, after a jury has rendered its verdict, the Law Court is not a tribunal of the first instance having authority to hear and decide disputes upon questions of fact. Our power is limited to decisions of the question whether the verdict is so plainly contrary to the evidence that manifestly the jury was influenced by prejudice, bias, passion or mistake; otherwise their findings of fact are binding upon this court. See *Leavitt* v. *Seaney*, 113 Me. 119, 93 A. 46.

This court has many times stated the principles of law applicable to a case of this nature and it hardly seems nec-

essary to reiterate the rule so well known and so consistently applied in our State. See *Lessard* v. *Samuel Sherman Corp.*, 145 Me. 296, 75 A. (2nd) 425 and cases cited. See also *Chenery* v. *Russell*, 132 Me. 130, 133, 134, 167 A. 857.

In the instant case the burden of proving to the satisfaction of the court that the verdict was manifestly wrong is upon the one seeking to set it aside. See *Dube* v. *Sherman*, 135 Me. 144, 190 A. 809; *Perry* v. *Butler*, 142 Me. 154, 48 A. (2nd) 631; *Jannell* v. *Myers*, 124 Me. 229, 127 A. 156. In the instant case it is plain from the result and from a careful examination of the record that the jury adopted the views of the plaintiff with respect to the width of the right of way in controversy and there was ample credible evidence which would support their decision. The credit of the testimony of the witnesses of the plaintiff was for the jury and not for the court to decide. See *Jenness* v. *Park*, 145 Me. 402, 76 A. (2nd) 321 and cases cited.

In view of the above principles this court, sitting as a court of law, is without right to disturb the verdict of a jury which has heard the evidence on questions of fact such as existed in this case and where there appears to be no bias, prejudice or other errors of law or fact which would permit this court to take action. It therefore follows that the motion for a new trial must be overruled.

*Motion overruled.*